Opinion
 

 KITCHING, J.
 

 Introduction
 

 In the published portion of this opinion, we hold that a personal injury liability clause does not provide coverage for a cause of action for disparagement of title or slander of title brought against the insured. In the unpublished portion of this opinion, we find that under the circumstances of this case, the insurers did not waive their right to assert lack of coverage and to withdraw from defending the insured, and they were not estopped from doing so. We affirm a grant of summary judgment in favor of insurers in their suit seeking a declaration that they had no duty to defend and indemnify the insured against claims made against him in an underlying action.
 

 Procedural History
 

 The relevant procedural events in this complex case are as follows: On March 24, 1986, Kenneth J. Roberts (Roberts) and Mandeville Broadcasting Company (Mandeville) filed a complaint (the Roberts action) against Peter C. Bennett (Bennett). The Roberts action
 
 [1]
 
 alleged that Bennett had wrongfully claimed an ownership interest in radio station KROQ-FM as compensation for his services as Roberts’s attorney during the period in which Roberts acquired the Burbank Broadcasting Company (Burbank), the entity which formerly owned radio station KROQ-FM. Among many other causes of action, the Roberts action contained a “disparagement of title” cause of
 
 *79
 
 action. Truck Insurance Exchange (Truck) and other insurers had issued insurance policies to Bennett. Bennett demanded that Truck and the other insurers provide him with a defense to the Roberts action, indemnify Bennett, and pay legal fees.
 

 Bennett also cross-complained, alleging 47 causes of action against Roberts, Mandeville, and other defendants.
 

 In the action which gives rise to this appeal, Truck and other plaintiff insurers filed a complaint for declaratory relief (Code. Civ. Proc., § 1060) alleging two declaratory relief causes of action against Bennett. The declaratory relief causes of action alleged that although Truck and the other plaintiff insurers had provided a defense to the Roberts action pursuant to a complete reservation of rights, they denied any obligations under the insurance policies to defend or indemnify Bennett. A third cause of action sought declaratory relief against Charter Oak Fire Insurance Co. (Charter Oak), Associated Indemnity Insurance Company (Associated), and several other insurer defendants. It alleged that these insurers issued insurance policies to Bennett which provided coverage for defense and/or indemnity to him arising out of the breach alleged in the Roberts action. The third cause of action alleged that although the Roberts action had been tendered to these defendant insurers for defense and indemnity, only Truck and two other plaintiff insurers provided a defense in the Roberts action.
 

 Several parties filed cross-complaints. On February 6, 1989, pursuant to Bennett’s motion, the trial court ordered proceedings stayed in the declaratory relief action filed by Truck and the other insurers.
 

 Before the Roberts action was tried, Roberts dismissed his complaint against Bennett with prejudice. Trial proceeded on Bennett’s cross-complaint against Roberts. At the close of Bennett’s case, the trial court granted Roberts’s motion for nonsuit and dismissed all causes of action except those for quantum meruit and fraud. A February 5, 1991, judgment awarded Bennett $950,000 damages on his cross-complaint for recovery of legal fees against Roberts. The Court of Appeal
 
 [2]
 
 reversed the judgment on the cross-complaint against Roberts and remanded the matter with directions for the trial court to conduct a new trial on damages.
 

 After the stay in Truck’s declaratory relief action was lifted, the trial court granted summary judgment motions in favor of Truck, Associated, and Charter Oak. Bennett filed a timely notice of appeal. Respondents are Truck, Associated, and Charter Oak.
 

 
 *80
 
 Standard of Review
 

 The summary judgment motions were filed and ruled on by the trial court in 1992. Amendments to the summary judgment statute, Code of Civil Procedure section 437c, did not become effective until January 1, 1993. We therefore apply the standard of review according to the statute as it stood in 1992.
 
 (Montrose Chemical Corp.
 
 v.
 
 Superior Court
 
 (1993) 6 Cal.4th 287, 301, fn. 4 [24 Cal.Rptr.2d 467, 861 P.2d 1153].)
 

 As a summary judgment motion raises only questions of law regarding the construction and effect of supporting and opposing papers, this court independently applies the same three-step analysis required of the trial court. We identify issues framed by the pleadings; we determine whether the moving party’s showing established facts that negate the opponent’s claim and justify a judgment in the moving party’s favor, and if it does, we finally determine whether the opposition demonstrates the existence of a triable, material factual issue.
 
 (AARTS Productions, Inc.
 
 v.
 
 Crocker National Bank
 
 (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203].)
 

 In an appeal from a summary judgment, this court independently reviews the trial court’s determination of questions of law. The trial court’s stated reasons supporting its ruling do not bind this court, which reviews the ruling, not its rationale.
 
 (Stratton
 
 v.
 
 First Nat. Life Ins. Co.
 
 (1989) 210 Cal.App.3d 1071, 1083 [258 Cal.Rptr. 721].)
 

 Issues
 

 The published portion of this opinion addresses Bennett’s claim that because personal injury liability clauses in policies issued by Charter Oak, Truck, and Associated contained the words “disparaging” or “slander,” those personal injury liability clauses provided coverage for claims made against him in the Roberts action for disparagement or slander of title.
 

 The unpublished portion of this opinion addresses whether a triable issue of fact existed concerning waiver and estoppel which would prevent Charter Oak from withdrawing from Bennett’s defense.
 

 Discussion
 

 1.
 
 The Personal Injury Liability Clauses in the Charter Oak, Truck, and Associated Policies, and Roberts’s Disparagement of Title Claims Against Bennett
 

 The main issue in this appeal concerns whether the personal injury liability clauses provided coverage for Roberts’s disparagement of title claim
 
 *81
 
 against Bennett. We summarize the law concerning an insurer’s duty to defend, the relevant allegations in the Roberts complaint, and the personal injury liability clauses.
 

 a.
 
 The Duty to Defend
 

 An insurer has a duty to defend an insured if it learns from the complaint, or otherwise ascertains, facts that give rise to the potential of liability under the policy.
 
 (Gray
 
 v.
 
 Zurich Insurance Co.
 
 (1966) 65 Cal.2d 263, 276-277 [54 Cal.Rptr. 104, 419 P.2d 168].) The duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend an insured in an action in which no damages are awarded. The determination whether the insurer owes a duty to defend is made by comparing the allegations of the complaint with the terms of the policy. Facts known to the insurer and extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the policy may cover the claim. The existence of an insurer’s duty to defend turns upon the existence of facts known by the insurer when the third party begins the lawsuit against the insured.
 
 (Montrose Chemical Corp.
 
 v.
 
 Superior Court, supra,
 
 6 Cal.4th at pp. 295-296.)
 

 To prevail in an action seeking declaratory relief on the issue of the duty to defend, the insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential. “[T]he insured need only show that the underlying claim
 
 may
 
 fall within policy coverage; the insurer must prove it
 
 cannot.” (Montrose Chemical Corp.
 
 v.
 
 Superior Court, supra,
 
 6 Cal.4th at p. 300, italics in original.)
 

 The duty to defend, although broad, is not unlimited; it is measured by the nature and kinds of risk covered by the policy. Interpretation of an insurance policy is a question of law. Interpretation of the policy must give effect to the parties’ mutual intention, insofar as it can be inferred, where possible, solely from the policy’s written provisions.
 
 (Waller
 
 v.
 
 Truck Ins. Exchange, Inc.
 
 (1995) 11 Cal.4th 1, 18-19 [44 Cal.Rptr.2d 370, 900 P.2d 619].)
 

 b.
 
 Allegations in the Complaint in the Roberts Action
 

 The particular allegations of the complaint in the Roberts action, as supplemented by facts from the Court of Appeal opinion in
 
 Bennett
 
 v.
 
 Roberts, supra,
 
 B057316, are set forth as they relate to Bennett’s claims on appeal.
 

 Roberts was the sole shareholder of Mandeville, which owned and operated radio station KROQ-FM until September 19, 1986.
 

 
 *82
 
 By November 1973, Burbank had acquired AM and FM licenses to radio station KROQ-FM in Los Angeles. Roberts invested in Burbank during the early 1970’s, a period during which Burbank’s financial condition worsened, partners in Burbank engaged in litigation, and the two radio stations ceased to broadcast for two years. By April 1975, Roberts had gained control of Burbank and its rights to the radio licenses, but the Federal Communications Commission (FCC) disapproved of this arrangement. Bennett attempted to obtain FCC approval for eight years before finally obtaining the FM license to KROQ in 1984. During this time the value of the radio station increased.
 

 Roberts retained Bennett as his attorney from 1971 until 1976. Between November 1972 and April 1973, Roberts lent $500,000 to Burbank, which in turn granted Roberts an option to obtain a 25 percent interest in Burbank. In late May 1973, pursuant to a second agreement, Roberts agreed to lend a further $350,000 to Burbank, which granted him an additional 25 percent ownership interest in Burbank. Bennett acted as Roberts’s attorney in these transactions. Bennett’s fiduciary duty to Roberts prohibited Bennett from acquiring any security or other pecuniary interest adverse to Roberts in connection with Bennett’s legal services to Roberts.
 

 In June 1973, while Roberts was outside California, Burbank requested that Roberts immediately advance $50,000 to Burbank pursuant to Roberts’s second loan commitment. Roberts agreed to Bennett’s suggestion that Bennett, as Roberts’s attorney, approach City National Bank, a bank Roberts had previously used, and arrange a $50,000 loan to Roberts. Bennett would then forward the loan proceeds to Burbank on behalf of Roberts.
 

 On June 13, 1973, without Roberts’s knowledge or consent, Bennett obtained a $50,000 loan from City National Bank in Bennett’s own name. Bennett advanced that amount to Burbank and purported to enter into a June 13, 1973, letter agreement with Burbank under which Bennett claimed he was entitled individually, and not as an agent for his client Roberts, to 3 percent of the total issued and outstanding stock and/or ownership interest in Burbank and its affiliated or related companies or enterprises.
 

 Bennett also claimed he entered into an oral contingent fee agreement with Roberts. Under this alleged oral agreement, Bennett contended he was entitled to additional stock ownership interest of 25 percent of the total ownership interest acquired or owned by Roberts and any related persons, firms or companies in Burbank and any of its affiliated or related companies or enterprises. Bennett also contended he was entitled to 25 percent of all earnings or profits paid to Roberts or any related entity.
 

 Roberts denied that he ever entered into a written or oral contingency fee arrangement with Bennett. The disparagement of title cause of action alleged
 
 *83
 
 that after Burbank transferred its assets to Mandeville and the FCC issued the broadcast license for KROQ-FM to Mandeville in September 1984, Bennett wrongfully published a December 31, 1985, letter claiming a 28 percent ownership interest in KROQ-FM and affiliated or related companies. Bennett repeated these ownership claims a month later in a second letter dated January 31, 1986.
 

 Finally, the complaint alleged that Bennett’s publications were materially false; clouded Roberts’s title to, and threatened the salability of Mandeville’s exclusive property; threatened the FCC license held by Mandeville; and interfered with Mandeville’s ability to do business. The publications made it necessary for Roberts to retain attorneys, undertake expensive investigation and collection, and bring the action. The action sought to adjudicate two issues: first, that the June 13, 1973, letter agreement conferred no rights in favor of Bennett either against Bennett’s then-client Roberts or later against Roberts’s wholly owned corporation Mandeville, the owner of KROQ-FM; and second, that the claims made in Bennett’s December 31, 1985, letter, casting doubt on Roberts’s sole former title to Burbank, on Mandeville’s former sole title, on Burbank’s former assets exclusive of the FCC broadcasting license, and on Mandeville’s former rights as exclusive holder of the FCC license to operate KROQ-FM, were false.
 

 c.
 
 The Charter Oak Policy
 

 The “Personal Injury and Advertising Injury Liability Coverage” of the Charter Oak policy states: “The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies, sustained by any person or organization and arising out of the conduct of the Named Insured’s business, within the policy territory, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such injury, even if any of the allegations of the suit are groundless, false or fraudulent[.]”
 

 The policy further defined “personal injury” to mean “injury arising out of one or more of the following offenses committed during the policy period: [¶ (1) false arrest, detention, imprisonment, or malicious prosecution; [¶ (2) wrongful entry or eviction or other invasion of the right of private occupancy; [D (3)
 
 a publication or utterance
 
 (a)
 
 of a libel or slander or other defamatory or disparaging material,
 
 or [¶ (b) in violation of an individual’s right of privacy; [¶ except publication or utterances in the course of or related to advertising, broadcasting, publishing or telecasting activities conducted by or on behalf of the Named [Insured.]” (Italics added.)
 

 
 *84
 
 2.
 
 The Personal Injury Liability Clauses Provide No Coverage for Disparagement or Slander of Title Claims in the Roberts Complaint
 

 Based on the italicized wording, Bennett argues that the Charter Oak personal injury liability clause covered economic damages and injuries arising from Roberts’s disparagement of title claim. Bennett contends that the word “disparaging” means something other than injury to a person’s reputation, and instead means injury to real property, such as disparagement of title. We do not agree.
 

 a.
 
 Disparagement of Title as Distinguished From Defamation
 

 The word “disparaging” in the Charter Oak personal injury liability clause applies to defamation of a person’s reputation, not to an action for disparagement or slander of title to property.
 

 The gravamen of an action for “disparagement of title,” also known as “slander of title,” differs from that of an action for personal defamation.
 
 (Hill
 
 v.
 
 Allan
 
 (1968) 259 Cal.App.2d 470, 490 [66 Cal.Rptr. 676].) Disparagement of title occurs when a person, without a privilege to do so, publishes a false statement that disparages title to property and causes pecuniary loss.
 
 (Stalberg
 
 v.
 
 Western Title Ins. Co.
 
 (1994) 27 Cal.App.4th 925, 929 [32 Cal.Rptr.2d 750].) “The elements of the tort are (1) publication, (2) absence of justification, (3) falsity and (4) direct pecuniary loss.”
 
 (Seeley
 
 v.
 
 Seymour
 
 (1987) 190 Cal.App.3d 844, 858 [237 Cal.Rptr. 282].) What makes conduct actionable is not whether a defendant succeeds in casting a legal cloud on plaintiff’s title, but whether the defendant could reasonably foresee that the false publication might determine the conduct of a third person buyer or lessee.
 
 (Ibid.; Wilton
 
 v.
 
 Mountain Wood Homeowners Assn.
 
 (1993) 18 Cal.App.4th 565, 568 [22 Cal.Rptr.2d 471].) The thrust of the tort of disparagement or slander of title is protection from injury to the salability of property.
 
 [3]
 

 (Howard
 
 v.
 
 Schaniel
 
 (1980) 113 Cal.App.3d 256, 264 [169 Cal.Rptr. 678].) This differs, in character and in kind, from the right protected by coverage for “personal injury” defined in the Charter Oak
 
 *85
 
 policy as “publication or utterance ... of a libel or slander or other defamatory or disparaging material.”
 

 Defamation, by contrast, injures a person’s reputation. Rather than interfering with a property right, economic relations, or the sale of goods, defamation invades the interest in personal or professional reputation and good name. A defamation claim vindicates personal interests, and is a personal injury.
 
 (O’Hara
 
 v.
 
 Storer Communications, Inc.
 
 (1991) 231 Cal.App.3d 1101, 1118 [282 Cal.Rptr. 712];
 
 Polygram Records, Inc.
 
 v.
 
 Superior Court
 
 (1985) 170 Cal.App.3d 543, 548-550 [216 Cal.Rptr. 252];
 
 Auvil
 
 v.
 
 CBS 60 Minutes
 
 (E.D.Wash. 1992) 800 F.Supp. 928, 932; Civ. Code § 44 et seq.) The distinction between the property or economic interest at stake in a slander or disparagement of title cause of action, and the personal interest in reputation at stake in a defamation cause of action, recurs in several other legal contexts.
 
 [4]
 

 We are aware of no authority that includes disparagement or slander of title in the group of acts or offenses for which personal liability clauses provide coverage.
 

 
 *86
 
 b.
 
 The Context of the Policy
 

 Like many such clauses, the Charter Oak personal injury liability clauses group personal injury into four subdivisions of similar injuries or tortious conduct. Given this context, it is not reasonable to interpret the term “disparagement” other than in relation to the class of torts in which it is placed, i.e., defamation torts dealing with injuries to character and reputation. (See
 
 American Motorists Ins. Co.
 
 v.
 
 Allied-Sysco Food Services, Inc.
 
 (1993) 19 Cal.App.4th 1342, 1351 [24 Cal.Rptr.2d 106]; and
 
 Waranch
 
 v.
 
 Gulf Insurance Co.
 
 (1990) 218 Cal.App.3d 356, 361 [266 Cal.Rptr. 827].)
 

 The syntax and wording of the Charter Oak personal injury liability clause support this conclusion. In this clause, “disparaging” acts as a synonym for defamatory; it does not refer to a cause of action for “disparagement” of title. The Charter Oak personal injury liability clause uses the wording, “a libel or slander or other defamatory or disparaging material.” The adjectival “disparaging”—which differs from the noun “disparagement” used in a “disparagement of title” cause of action—explains and modifies the noun “material,” and is paired with its companion adjective, “defamatory.”
 

 This language cannot reasonably be read to include any more than those causes of action customarily grouped together into the legal category of defamation. The reference to “disparaging” in the Charter Oak personal injury liability clause falls within the class of several torts that protect a person’s interest in reputation, dignity, and character.
 
 (American Motorists, Ins. Co.,
 
 v.
 
 Allied-Sysco Food Services, Inc., supra,
 
 19 Cal.App.4th at p. 1352.) Given the “defamation” context in which the word “disparaging” appears, we conclude that the personal injury liability clause is not ambiguous and that it would not be reasonable for an insured to expect that a personal injury liability clause would cover those causes of action. (See
 
 Bank of the West
 
 v.
 
 Superior Court
 
 (1992) 2 Cal.4th 1254, 1265 [10 Cal.Rptr.2d 538, 833 P.2d 545]: “[A] court that is faced with an argument for coverage based on assertedly ambiguous policy language must first attempt to determine whether coverage is consistent with the insured’s objectively reasonable expectations. In so doing, the court must interpret the language in context, with regard to its intended function in the policy. [Citations.] This is because ‘language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract.’ [Citations; italics omitted.]”.)
 

 We therefore find no basis for imposing a duty to defend on Charter Oak.
 

 
 *87
 
 c.
 
 The Truck and Associated Personal Injury Liability Clauses Do Not Provide Coverage for Disparagement!Slander of Title to Property
 

 Bennett also claims that the “disparagement of title” cause of action in Roberts’s complaint created the potential for coverage under the personal injury liability clauses of the Truck and Associated policies. Bennett argues that these policy definitions, by including the word “slander,” provide coverage for a cause of action for “slander of title.”
 

 Those policies use slightly different wording,
 
 [5]
 
 but the analysis is the same. Although based on “slander” and “slander of title,” this claim merely reiterates the argument for construing a personal injury liability clause containing the word “disparaging” to provide coverage for a “disparagement of title” action. For the reasons already discussed, we reject this argument.
 

 d.
 
 The Cases Bennett Relies on Do Not Apply
 

 No California case has held that a personal injury liability clause covers disparagement or slander of title. The sole authorities Bennett offers for the idea that a personal injury liability clause provides coverage for disparagement or slander of title are
 
 Lindsey
 
 v.
 
 Admiral Ins. Co.
 
 (N.D.Cal. 1992) 804 F.Supp. 47 and
 
 Aetna Cas. & Sur. Co.
 
 v.
 
 Centennial Ins. Co.
 
 (9th Cir. 1988) 838 F.2d 346. We conclude that these cases do not support Bennett’s claim on appeal.
 

 In
 
 Lindsey,
 
 two employees sued their insured employer under the Fair Employment and Housing Act for sexual harassment by Lindsey, a coemployee. Defendant insurers rejected the insured employer’s tender of defense to the complaint. The insured employer later sued the insurers, alleging that the employees’ complaint imposed on the insurers a duty to defend and indemnify pursuant to personal injury liability coverage, defined as “the
 
 *88
 
 publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual’s right of privacy[.]’’
 
 (Lindsey
 
 v.
 
 Admiral Ins. Co., supra,
 
 804 F.Supp. at p. 50.) Finding that no case held that a sexual harassment claim is a covered personal injury risk,
 
 Lindsey
 
 granted defendant insurers’ motion for judgment on the pleadings and dismissed with prejudice causes of action for breach of contract and bad faith.
 
 (Id.
 
 at pp. 51-53.)
 

 Lindsey
 
 also addressed the insureds’ argument that the employees’ sexual harassment complaint sought damages for “disparagement.”
 
 Lindsey
 
 rejected this characterization of the sexual harassment cause of action.
 
 Lindsey
 
 stated: “The tort of disparagement has a very specific meaning under California law. The term ‘disparagement’ refers to the twin torts of trade libel and slander of title.
 
 Leonardini
 
 v.
 
 Shell Oil Co.,
 
 216 Cal.App.3d 547, 572-574, . . . ; 5 Witkin,
 
 Summary of California Law,
 
 § 567 at 661 (9th ed. 1988). Both trade libel and slander of title concern damage to property, not reputation, and are not implicated by the [employees’] Complaint.”
 
 (Lindsey
 
 v.
 
 Admiral Ins. Co., supra,
 
 804 F.Supp. at p. 52.)
 

 Lindsey
 
 thus correctly finds that a sexual harassment complaint does not constitute an action for either trade libel or slander of title. In rejecting the sexual harassment plaintiffs’ theory, however,
 
 Lindsey
 
 concludes that the complaint before it could not possibly constitute a claim covered by a personal injury clause, because the complaint did not allege the necessary legal elements either for defamation
 
 or
 
 for trade libel or slander of title. (804 F.Supp. at p. 52.) Thus the
 
 Lindsey
 
 opinion implies that if the plaintiffs had properly pleaded allegations that satisfied all elements of the slander of title or trade libel causes of action, the personal injury liability clauses would have provided coverage.
 

 That erroneous implication permits Bennett to urge
 
 Lindsey
 
 as authority for including a slander or disparagement of title cause of action among those for which a personal injury liability clause provides coverage. Bennett’s reading mischaracterizes
 
 Lindsey,
 
 however, and the authorities
 
 Lindsey
 
 relies upon do not support it.
 

 Leonardini
 
 v.
 
 Shell Oil Co.
 
 (1989) 216 Cal.App.3d 547 [264 Cal.Rptr. 883], a malicious prosecution case, does not involve the insurer’s “duty to defend.”
 
 Leonardini
 
 has no occasion to consider the definition of “disparagement” in a personal injury liability clause.
 
 [6]
 

 Witkin, cited by both
 
 Lindsey
 
 and
 
 Leonardini,
 
 shows why personal injury liability does not include “disparagement of title” or “slander of title.”
 
 *89
 
 Witkin asserts “one basic difference” between actions for defamation and actions for disparagement: “The action for defamation is designed to protect the
 
 reputation
 
 of the plaintiff, and the judgment vindicates that reputation, whereas the action for disparagement is based on
 
 pecuniary damage
 
 and lies only where such damage has been suffered.” (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 567, pp. 661-662, italics in original.)
 

 Aetna Cas. & Sur. Co.
 
 v.
 
 Centennial Ins. Co., supra,
 
 838 F.2d 346 correctly states this distinction, yet without analysis claims to follow
 
 Nichols
 
 v.
 
 Great American Ins. Companies
 
 (1985) 169 Cal.App.3d
 
 766,112-11A
 
 [215 Cal.Rptr. 416].
 
 Aetna
 
 claims that
 
 Nichols
 
 “implicitly recognized” that a personal injury liability clause encompassed trade libel or disparagement.
 
 Nichols
 
 did not so hold.
 
 Nichols
 
 found that the complaint did not state a cause of action for trade libel because it lacked the necessary element of defamatory publication, and even if its allegations could be construed to contain defamatory publication, they fell within an exception from coverage for advertising.
 
 {Id.
 
 at pp. 773-775.)
 

 Aetna
 
 found that a cause of action for “false designation of origin and unfair competition” (15 U.S.C. § 1125) and a “common law trade mark infringement” cause of action were not covered under the personal injury liability clause: as “ ‘publication or utterance of a libel or slander or of other defamatory or disparaging material.’ ”
 
 {Aetna Cas. & Sur. Co.
 
 v.
 
 Centennial Ins. Co., supra,
 
 838 F.2d at p. 351.)
 

 Regarding the argument that a “generalized” unfair competition cause of action alleged a form of trade libel,
 
 Aetna
 
 stated correctly that “[t]rade libel is not .'. . a true libel and is not actionable as defamation. [Citation.] It is more akin to unfair competition. [Citation.] Trade libel and product disparagement are injurious falsehoods that interfere with business. Unlike classic defamation, they are not directed at the plaintiff’s personal reputation but rather at the goods a plaintiff sells or the character of his other business.”
 
 (Aetna Cas. & Sur. Co.
 
 v.
 
 Centennial Ins. Co., supra,
 
 838 F.2d at p. 351.)
 

 Although
 
 Aetna
 
 assumes that a personal injury liability clause provides coverage for trade libel—a false assumption, we
 
 believe—Aetna
 
 found the complaint did not allege that the insured disparaged someone else’s products, but rather “palmed off’ or appropriated those products for its own use.
 
 *90
 
 Thus the complaint did not raise a possibility of liability because it did not allege the elements of trade libel.
 
 (Aetna Cas. & Sur. Co.
 
 v.
 
 Centennial Ins. Co., supra,
 
 838 F.2d at p. 351.)
 

 Analysis of the final cause of action in
 
 Aetna,
 
 “injury to business reputation,” proceeds similarly. Although the opinion suggests that injury to business reputation “would seem to be covered[,]” the complaint in
 
 Aetna
 
 alleged only that the insured copied plaintiff’s goods, which constitutes unfair competition or trademark infringement, not disparagement. Thus this cause of action raised no possibility of coverage under the personal injury liability clause.
 
 (Aetna Cas. & Sur. Co.
 
 v.
 
 Centennial Ins. Co., supra,
 
 838 F.2d at pp. 351-352.)
 

 Lindsey
 
 and
 
 Aetna
 
 find that allegations in the complaints failed to satisfy all legal elements of the causes of action. Thus the legal insufficiency of the complaints made it unnecessary for
 
 Lindsey
 
 or
 
 Aetna
 
 to explore whether a personal injury liability clause would provide coverage of a satisfactorily pleaded complaint, and neither case embarked on that exploration. By focusing on the legal sufficiency of allegations in the complaints before them, instead of analyzing what personal injury liability coverage includes,
 
 Aetna
 
 and
 
 Lindsey
 
 illustrate the limits of that approach. Disparagement or slander of title is one of several torts that apply to business relations and which may be grouped under the label “ ‘injurious falsehood.’ ”
 
 (Guess, Inc.
 
 v.
 
 Superior Court, supra,
 
 176 Cal.App.3d 473, 479.) Howsoever the cause of action is styled, disparagement or slander of title invades an interest in vendibility of
 
 property.
 
 It reduces the value of the property, makes property more difficult to sell or lease, or otherwise produces economic loss. (See
 
 Appel
 
 v.
 
 Burman
 
 (1984) 159 Cal.App.3d 1209, 1215 [206 Cal.Rptr. 259], and
 
 Guess, Inc.
 
 v.
 
 Superior Court, supra,
 
 176 Cal.App.3d at p. 478-479.) A personal injury liability clause, providing coverage for torts involving harm to personal reputation, does not provide coverage for disparagement or slander of title.
 

 We therefore find no basis for imposing a duty to defend on Charter Oak, Truck, or Associated.
 

 3.
 
 Waiver and Estoppel by Charter
 
 Oak
 
 *
 

 
 *91
 
 Disposition
 

 The judgment is affirmed. Costs awarded to respondents.
 

 Klein, P. J., and Aldrich, J., concurred.
 

 Appellant’s petition for review by the Supreme Court was denied June 18, 1997. Mosk, J., was of the opinion that the petition should be granted.
 

 [1]
 

 Roberts v. Bennett (Super. Ct. L.A. County, 1986, No. C59274).
 

 [2]
 

 Trial was held on Bennett’s cross-complaint, and Roberts appealed from that judgment;
 
 Bennett
 
 v.
 
 Roberts
 
 (Dec. 30, 1994) B057316 (nonpub. opn.).
 

 [3]
 

 Unless some interest in property is involved, the cause of action does not lie. “An action for slander of title is maintainable only by one who possess an estate or interest in the property.” (Annot., Slander of Title: Sufficiency of Plaintiff’s Interest in Real Property to Maintain Action (1991) 86 A.L.R.4th 738, 742, §2.) This annotation sets forth in “what circumstances the plaintiff in an action for slander (or disparagement) of title to real property has a sufficient interest in the property to be entitled (or have standing) to bring the action.”
 
 (Id.
 
 at p. 741, § 1.) On this issue, see also comment c to section 624 of the Restatement Second of Torts, page 344, defining the “legally protected interest in land, chattels or intangible things” that may be subject to “disparagement” for purposes of disparagement or slander of title.
 

 [4]
 

 See comment a to section 624, “Disparagement of Property—Slander of Title,” in the Restatement Second of Torts,
 
 supra,
 
 page 343: “The association with personal defamation through the word ‘slander’ has unfortunately tended to lead the courts to regard the plaintiff’s property interest as somehow personified, and so defamed, and thus to look to the law of defamation. ‘Slander of title,’ however, differs from personal defamation in at least three important respects. One is that proof of special harm is required in all cases. . . . Another is that there must be proof of a greater amount of fault than negligence on the part of the defendant regarding the falsity of the statement. . . . The third is that because of the economic interest involved the disparagement of property may in a proper case be enjoined, whereas defamation normally cannot.”
 

 Furthermore, a slander or disparagement of title action is assignable, as it arises from the violation of a property right; a defamation cause of action, as arising from the purely personal right of the reputation of the one injured, is not assignable.
 
 (Goodley
 
 v.
 
 Wank & Wank, Inc.
 
 (1976) 62 Cal.App.3d 389, 393 [133 Cal.Rptr. 83].) A slander or disparagement of title cause of action also survives the death of the plaintiff (or of the defendant).
 
 (Smith
 
 v.
 
 Stuthman
 
 (1947) 79 Cal.App.2d 708, 709-710 [181 P.2d 123].) By contrast, a defamation cause of action does not survive plaintiff’s death.
 
 (Flynn
 
 v.
 
 Higham
 
 (1983) 149 Cal.App.3d 677, 680 [197 Cal.Rptr. 145].)
 

 In California, the one-year statutory limitations period (Code Civ. Proc., § 340, subd. (3)) applies to defamation causes of actions as infringements of personal rights, while the two-year period (Code Civ. Proc., § 339, subd. 1) applies to injurious falsehood causes of action (including disparagement or slander of title) as infringements of property rights.
 
 (Guess, Inc.
 
 v.
 
 Superior Court
 
 (1986) 176 Cal.App.3d 473, 477-479 [222 Cal.Rptr. 79].)
 

 A defamation cause of action, involving a personal injury, can form a basis for prejudgment interest. (Civ. Code, § 3291;
 
 O'Hara
 
 v.
 
 Storer Communications, Inc., supra,
 
 231 Cal.App.3d at pp. 1117-1118.) By contrast, a slander or disparagement of title cause of action, vindicating a property interest, would not qualify for Civil Code section 3291 prejudgment interest.
 
 (Holmes
 
 v.
 
 General Dynamics Corp.
 
 (1993) 17 Cal.App.4th 1418, 1436 [22 Cal.Rptr.2d 172];
 
 Continental Ins. Co.
 
 v.
 
 Superior Court
 
 (1995) 37 Cal.App.4th 69, 86 [43 Cal.Rptr.2d 374].)
 

 [5]
 

 The Truck policy’s “coverages” clause states that the insurer agreed “[t]o indemnify the insured for all sums which the insured shall be legally obligated to pay as damages and expenses, all as more fully defined by the term ‘ultimate net loss’ on account of: [¶ 1. Personal Injuries, including death at any time resulting therefrom[;] [¶ 2. Property Damage; caused by or arising out of each occurrence happening anywhere in the world.” The policy defined “personal injury” in part as “libel, slander, defamation of character or invasion of rights of privacy[.]” Different wording appears in the 1986-1987 Truck policy, which defines “personal injury” to include “libel, slander, defamation, humiliation, or a publication or utterance in violation of a person’s right of privacy[.]”
 

 The Associated policy states: “ ‘[Personal injury’ shall mean: [¶ 1. bodily injury, mental injury, mental anguish, shocks, sickness, disease, death and disability; [¶ 2. false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution, discrimination, humiliation; [¶ 3. libel, slander, defamation of character, wrongful entry or invasion of rights of privacy.”
 

 [6]
 

 In
 
 Leonardini,
 
 an attorney brought a malicious prosecution action against a manufacturer of pipe resin after the manufacturer, in federal court, sought to enjoin the attorney’s alleged
 
 *89
 
 trade libel that the manufacturer’s product contained a carcinogen. The issue in
 
 Leonardini
 
 involved the requirement that a malicious prosecution plaintiff must show that defendant brought the underlying action without probable cause.
 
 Leonardini
 
 concluded that the manufacturer had no probable cause to seek injunctive or declaratory relief, and affirmed the jury’s award in favor of plaintiff attorney.
 
 {Leonardini
 
 v.
 
 Shell Oil Co., supra,
 
 216 Cal.App.3d at pp. 572-580.)
 

 *
 

 See footnote,
 
 ante,
 
 page 75.