# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GAVIN POLONE,

        *Petitioner,*

v.

COMMISSIONER OF INTERNAL
REVENUE,

        *Respondent.*

No. 04-72672

Tax Ct. No.
12665-00

OPINION

Appeal from a Decision of the
United States Tax Court

Argued and Submitted
April 6, 2006—Pasadena, California

Filed June 5, 2006

Before: Jerome Farris and Sidney R. Thomas, Circuit Judges,
and George Schiavelli,* District Judge.

Opinion by Judge Thomas

---

*The Honorable George Schiavelli, United States District Judge for the Central District of California, sitting by designation.

**COUNSEL**

James M. Harris, Edwin L. Norris, Jonathan M. Brenner, Sidley Austin Brown & Wood LLP, for appellant Gavin Polone.

Bridget M. Rowan, Kenneth L. Greene, Eileen J. O'Connor, United States Department of Justice, for appellee Commissioner of the Internal Revenue Service.

**OPINION**

THOMAS, Circuit Judge:

This appeal presents the question of whether payments received after the effective date of amendments to 26 U.S.C.

§ 104(a)(2) based on a defamation settlement agreement executed prior to the effective date can be excluded from gross income. We conclude that the amendments apply to payments received after the effective date of the amendment, and we affirm the judgment of the Tax Court.

I

Gavin Polone worked as a talent agent at United Talent Agency ("UTA") from 1989 until April 21, 1996, when he was fired. After terminating Polone, UTA spoke with various entertainment industry trade publications, and made statements about Polone's termination. Specifically, UTA alleged that Polone was terminated for "inappropriate behavior."

Polone hired counsel, and sent UTA a demand letter on April 22, 1996. The letter alleged that UTA had made defamatory statements about Polone, and requested that UTA "cease and desist from making further defamatory statements." On April 24, 1996, Polone filed a complaint in the Los Angeles County Superior Court alleging, among other things, wrongful termination and defamation. Polone and UTA settled both claims on May 3, 1996.

Polone received $2 million as settlement of the wrongful termination claim, which is not at issue in this case. As part of the settlement of the defamation claim, UTA issued a press release retracting its previous statements about Polone's termination, and paid Polone $4 million. The $4 million was paid in four installments of $1 million, which Polone received on May 3, 1996; November 11, 1996; May 5, 1997; and November 11, 1998.

Polone, a cash basis taxpayer, did not include the May 1996 payment on his 1996 federal income tax return. He included the November 1996 payment, but later filed an amended 1996 return seeking a refund. He did not pay taxes on the May 1997 or November 1998 payments. Polone justified his failure

to pay taxes on this income on our decision in *Warren Jones Co. v. Comm'r*, 524 F.2d 788 (9th Cir. 1975), alleging that *Warren Jones Co.* required him "to treat his receipt of his former employer's promise to pay $4 million as an amount realized in the 1996 taxable year at the time of his receipt of the promise to pay."

In September 2000, the IRS sent Polone a deficiency notice for his failure to pay taxes on the settlement payments he received in May 1996, May 1997, and November 1998. Polone petitioned for review in the Tax Court in December 2000. He also filed an amended petition in August 2002, claiming that the IRS should have reduced his 1996 taxable income by $1 million because he had erroneously paid taxes on the November 1996 settlement payment. The Tax Court held that Polone owed taxes on the May 1997 and November 1998 settlement payments, and that the taxes he paid on the November 1996 settlement payment were proper. *Polone v. Comm'r*, T.C. Memo 2003-339 (2003). The Tax Court also held that Polone did not owe any taxes on the May 1996 settlement payment. *Id.* He appeals.

II

**[1]** Section 61(a) of the Tax Code defines "gross income" as "all income from whatever source derived." 26 U.S.C. § 61(a). Thus, subject to certain exemptions, which are to be construed narrowly, § 61(a) applies to all income, including settlement payments. *Comm'r v. Schleier*, 515 U.S. 323, 328 (1995) ("the default rule of statutory interpretation [is] that exclusions from income must be narrowly construed." (quotations omitted)); *Comm'r v. Glenshaw Glass*, 348 U.S. 426, 431 (1955) ("The mere fact that payments were extracted from the wrongdoers as punishment for unlawful conduct can not detract from their character as taxable income to the recipients.").

In May 1996, when Polone and UTA settled, 26 U.S.C. § 104 exempted "the amount of any damages received

(whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness" from a taxpayer's gross income. 26 U.S.C. § 104(a)(2) (1995). The term "personal injuries" in § 104 had been interpreted to include damages from settlements of defamation claims. *Roemer v. Comm'r*, 716 F.2d 693, 700 (9th Cir. 1983).

**[2]** Congress amended § 104 in August 1996 so that it exempted "the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or periodic payments) on account of personal *physical* injuries or *physical* sickness." 26 U.S.C. § 104(a)(1) (1996) (emphasis added). The amendment legislatively overruled court decisions, like *Roemer*, that had exempted awards for nonphysical injuries from a taxpayer's gross income. *See* H.R. CONF. REP. 104-737 at 301 ("Thus, the exclusion from gross income does not apply to any damages received . . . based on a claim of . . . injury to reputation."). The effective date of the amendments was August 20, 1996, but there was an exception to the amendment for "amount[s] received under a written binding agreement, court decree, or mediation award in effect on (or issued before) September 13, 1995." 26 U.S.C. § 104, Application of August 20, 1996 Amendments.

Here, the Tax Court held that pre-amendment § 104 applied to Polone's May 1996 payment from UTA, but that post-amendment § 104 applied to the November 1996, May 1997, and November 1998 payments because Polone received those payments after the amendment's effective date. *Polone*, T.C. Memo 2003-339 at 66. As a result, it held that the May 1996 payment was tax exempt, but that the other payments were not. *Id.* at 68. Polone argues that the pre-amendment § 104 applies to all four settlement payments he received, and thus that the $4 million in its entirety is tax exempt. Whether the May 1996 version of § 104 or the amended version of § 104 governs the settlement payments that Polone received after the amendment's effective date is a question of statutory

interpretation that we review de novo. *Leslie v. Comm'r*, 146 F.3d 643, 648 (9th Cir. 1998).

**[3]** Applying the plain language of § 104, the Tax Court properly held that the November 1996, May 1997, and November 1998 payments were taxable. The amended statute applies to any damages *received* after its effective date of August 20, 1996, unless the parties had contracted prior to September 13, 1995. P.L. 104-188, Title I, Subtitle F, Part 1, § 1605(d).[1] Although Polone settled his claims with UTA in May 1996, he did not actually *receive* the three payments in question until well after the effective date of the amendments to § 104. Because the settlement was not in effect before September 13, 1995, it was not subject to the exception to amended § 104 for preexisting settlement agreements. Thus, the amended version of § 104 applies to the payments Polone received in November 1996, May 1997, and November 1998, and the Tax Court properly sustained the IRS's deficiency notice.

### III

Polone, citing our decision in *Warren Jones Co.*, argues that under 26 U.S.C. § 1001, which explains how to calculate taxable gain from the "sale or other disposition of property," his entire settlement of $4 million was realized on May 3, 1996, the date of settlement, even though UTA paid him in installments. Therefore, he argues, pre-amendment § 104 applies to the entire $4 million he received from UTA. The application of § 1001 to Polone's settlement with UTA is a question of statutory interpretation that we review de novo. *Leslie*, 146 F.3d at 648.

**[4]** Section 1001 provides that the "gain from the sale or other disposition of property shall be the excess of the amount

---

[1]September 13, 1995 was the date upon which Congress first proposed to amend § 104. H.R. 2491 (104th Cong., 1995).

realized therefrom over the adjusted basis." 26 U.S.C. § 1001(a).[2] To fall within its boundaries, property must (1) have an "adjusted basis" and (2) be transferable. *Id.* Because a personal injury claim, such as Polone's defamation claim, does not have an adjusted basis and is not transferable, § 1001 does not apply to a settlement of such a claim.

To calculate the "adjusted basis," § 1001(a) looks to 26 U.S.C. § 1011, which, in turn, looks to 26 U.S.C. § 1012. Section 1012 states, "The basis of property shall be the cost of such property, except as otherwise provided in this subchapter." 26 U.S.C. § 1012. It then specifically references sections of the Internal Revenue Code dealing with corporate distributions, partnerships, and capital gains. *Id.*

[5] Polone's defamation claim has no adjusted basis within the meaning of § 1001. It was not a corporate distribution, partnership revenue, or a capital gain. Therefore, its "adjusted basis" would have had to have been calculated pursuant to § 1012. A § 1012 calculation, however, is based on cost, which is antithetical to a defamation claim. As the California courts have noted, defamation does not "interfer[e] with a property right, economic relations, or the sale of goods." *Truck Ins. Exch. v. Bennett*, 61 Cal. Rptr. 2d 497, 503 (Cal. App. 1997). Rather, "defamation invades the interest in personal or professional reputation and good name. A defamation claim vindicates personal interests, and is a personal injury." *Id.* Such a personal injury cannot reasonably be said to have a cost in the traditional market sense that § 1012 requires, in that one cannot sell one's dignity as a commodity on the open market.

---

[2]For purposes of this appeal, we assume, but do not decide, that a legal claim could be considered property for purposes of § 1001. *See*, *e.g.*, *United States v. Stonehill*, 83 F.3d 1156, 1159 (9th Cir. 1996) (holding that a legal claim is property for purposes of the federal tax lien statute, 26 U.S.C. § 6321); *Herbert's Estate v. Comm'r,* 139 F.2d 756 (3d Cir. 1943) (noting that a stockholder's claim against a corporation was property for purposes of 26 U.S.C. § 111, the predecessor to § 1001).

Moreover, "[t]he test for characterizing proceeds of litigation is stated most simply as 'In lieu of what were the damages awarded?'" and courts must look to the nature of the underlying claim when classifying damages awards for tax purposes. *Tribune Pub. Co. v. United States*, 836 F.2d 1176, 1178 (9th Cir. 1988) (citation omitted). We have explained that "[d]amages paid for personal injuries . . . make the taxpayer whole from a previous loss of personal rights — because, in effect, they restore a loss to capital." *Starrels v. Comm'r*, 304 F.2d 574, 576 (9th Cir. 1962). As a result, treating the settlement of a personal injury claim as a "gain" for purposes of § 1001 would be at odds with this basic concept of tort law. The money that Polone received as part of his settlement with UTA served to restore any loss to his reputation caused by UTA's alleged defamation and to make him whole. Such a restorative payment cannot be considered an "amount realized" for purposes of § 1001 because it simply put Polone in the position in which he would have found himself had the alleged defamation never happened.

**[6]** Turning briefly to the issue of transferability, California Civil Code § 954³ permits a plaintiff to transfer actions arising out of breach of contract or injuries to personal or real property, but not defamation claims, which are "founded upon wrongs of a purely personal nature such as to the reputation or the feelings of the one injured." *Goodley v. Wank & Wank, Inc.*, 133 Cal. Rptr. 83, 85 (Cal. App. 1976). *See also Baum v. Duckor, Spradling & Metzger*, 84 Cal. Rptr. 2d 703, 709 (Cal. App. 1999) ("Thus, causes of action for personal injuries arising out of a tort are not assignable nor are those founded upon wrongs of a purely personal nature such as to the reputa-

---

³We apply California law to determine whether Polone's defamation claim was transferable for purposes of § 1001 because "state law determines the nature of the legal interest the taxpayer has in the property. Once the court determines the state-law right possessed by the taxpayer, then the federal tax consequences are solely a matter of federal law." *Stonehill*, 83 F.3d at 1159.

tion or the feelings of the one injured."). Because Polone's defamation claim had no adjusted basis and was not transferable under California law, his settlement with UTA could not have been a "sale or other disposition of property" for purposes of § 1001.

IV

Polone also argues that pre-amendment § 104 should apply to the settlement payments he received in November 1996, May 1997, and November 1998 because applying amended § 104 to those payments would amount to retroactive legislation in violation of his Fifth Amendment due process rights. We review this constitutional claim de novo. *Quarty v. United States*, 170 F.3d 961, 965 (9th Cir. 1999).

**[7]** Retroactive legislation runs the risk of offending the Due Process Clause of the Fifth Amendment, *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994), and the Supreme Court has provided various formulas for determining whether a particular statute applies retroactively. For example, the Court has considered whether a statute "takes away or impairs vested rights acquired under existing laws," *id.* at 269 (quoting *Society for Propagation of the Gospel v. Wheeler*, 22 F. Cas. 756 (CC NH 1814)), or whether a law "changes the legal consequences of acts completed before its effective date," *id.* at 269 n.23 (quoting *Miller v. Florida*, 482 U.S. 423, 430 (1987)).

**[8]** The thrust of the various tests is that to operate retroactively, a statute must actually "attach[ ] new legal consequences" to completed, past conduct. *Id.* at 270. It is not enough that a statute "is applied in a case arising from conduct antedating the statute's enactment," or that a statute "upsets expectations based in prior law." *Id.* at 269-270. Thus, for example, even though "a new property tax or zoning regulation may upset the reasonable expectations that prompted those affected to acquire property," a change in the property tax regime would not be considered retroactive with respect

to all who had purchased property prior to the effective date of the amendment. *See id.* at 270 n.24.

**[9]** Applying this test to § 104, we hold that amended § 104 was constitutionally applied to the payments Polone received in November 1996, May 1997, and November 1998. As explained above, the amendment to § 104 explicitly applied only to amounts received after its effective date, which was August 20, 1996. 26 U.S.C. § 104, Application of August 20, 1996 Amendments. Although it is possible for a statute with a seemingly prospective application to apply retroactively in some circumstances, *Landgraf*, 511 U.S. at 258-59, the amendments to § 104 did not because they did not attach new legal consequences to completed payments. On the contrary, the amendments applied only prospectively, to payments made after their date of enactment. *Compare with Untermeyer v. Anderson*, 276 U.S. 440, 445 (1928) (a tax was retroactive where it applied to "bona fide gifts not made in anticipation of death and *fully consummated* prior to" the statute's effective date) (emphasis added); *Blodgett v. Holden*, 275 U.S. 142, 147 (1927) (same).

**[10]** Polone argues that the amendments to § 104 apply retroactively because his settlement with UTA was "finalized on May 3, 1996, more than three months *before* the enactment of the statute." This argument is unconvincing for two reasons. First, although the settlement contract may have been "finalized" in the sense that both parties signed it, settlement of Polone's defamation claim was nowhere near complete as of August 20, 1996. On the contrary, UTA still had to make three payments to Polone, and he had to honor his promise to guard UTA's confidential information. Thus, the Tax Court did not apply amended § 104 to a contract that was "fully consummated" prior to the amendment's effective date, as was the case in *Untermeyer* and *Blodgett*. Rather, amended § 104 was applied to a contract whose fulfillment was still a work in progress. Second, Polone's argument falls squarely into the Supreme Court's warning that "[a] statute does not operate

'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment." *Landgraf*, 511 U.S. at 269. The fact that Polone's tax dispute stemmed from his settlement with UTA — conduct that antedated the revisions to § 104 — does not mean that § 104 operates retrospectively when it is applied to settlement payments that Polone received after its effective date.

V

For the reasons explained above, we agree with the Tax Court that the settlement payments received by Polone after August, 1996 are taxable as ordinary income.

**AFFIRMED.**