T.C. Memo. 2007-166

UNITED STATES TAX COURT

STEPHEN S. ZIEGLER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23638-04.                    Filed June 27, 2007.

Michael J. Grace, for petitioner.

Roger W. Bracken, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, Judge:  Respondent determined the following defi-

ciencies in, additions under section 6651(a)(1)[1] to, and

accuracy-related penalties under section 6662(a) on petitioner's

_____

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code (Code) in effect for the years at
issue.  All Rule references are to the Tax Court Rules of Prac-
tice and Procedure.

Federal income tax (tax):

| Year | Deficiency | Addition to Tax | Accuracy-Related Penalty |
|------|-----------|-----------------|-------------------|
| 1995 | $12,112 | $0.00 | $2,308.60 |
| 1996 | 12,050 | 602.35 | 2,410.00 |
| 1997 | 28,819 | 2,881.40 | 5,763.80 |
| 1998 | 16,671 | 0.00 | 3,334.20 |
| 1999 | 19,665 | 0.00 | 3,933.00 |

The only issue remaining for decision is whether the application of section 469 to petitioner's claimed partnership losses for the respective years at issue violates the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

FINDINGS OF FACT

All of the facts in this case, which the parties submitted under Rule 122, have been stipulated by the parties and are so found.[2]

Petitioner resided in Jericho, New York, at the time he filed the petition in this case.

Petitioner practiced law as a tax attorney for decades, specializing in providing legal services to developers of real property, including low-income apartment complexes similar to those purchased and operated by the partnership in which peti-

---

[2]In violation of Rule 143(b), petitioner alleges on brief various facts (petitioner's alleged facts) not stipulated by the parties and not otherwise supported by the record in this case. In further violation of that Rule, petitioner attached to his opening brief various documents (petitioner's documents) that are not part of the record and that the Court had returned to petitioner. We shall not rely on petitioner's alleged facts or petitioner's documents.

tioner invested, as discussed below. During 1995 through 1999, the years at issue, petitioner practiced law full time with the law firm of Ziegler, Sagal & Winters, PC, in New York, New York.

During the years at issue, petitioner was a limited partner of Aldus Green Company (Aldus Green), a limited partnership formed under the laws of the State of New York. As a limited partner of Aldus Green, petitioner owned two percent of Aldus Green's capital, profits, and losses.

In 1984, Aldus Green purchased and operated certain low-income rental apartment buildings located in Bronx, New York. Aldus Green rented apartments in those buildings to low-income individuals, who received rent subsidies under section 8 of the United States Housing Act, as amended.

Petitioner filed Form 1040, U.S. Individual Income Tax Return, for each of his taxable years 1995 through 1999 (petitioner's returns). In each such return, petitioner claimed in Schedule E, Supplemental Income and Loss (Schedule E), a loss attributable to his investment in Aldus Green (petitioner's claimed Aldus Green loss) in arriving at "Total partnership and S corporation income or (loss)" in each such schedule. As a result, in Schedule E for each of the years at issue, petitioner claimed a total partnership and S corporation loss. In each of petitioner's returns for the years at issue, petitioner offset the total partnership and S corporation loss claimed in Schedule

E against income from other sources in arriving at total income for each such year.

Respondent issued to petitioner a notice of deficiency (notice) with respect to his taxable years 1995 through 1999. In that notice, respondent determined petitioner's claimed Aldus Green loss for each of those years to be a passive activity loss under section 469, allowed each such loss to the extent of income from passive activities for each such year, and disallowed the following amount of petitioner's claimed Aldus Green loss for each such year:

| Year | Amount |
| --- | --- |
| 1995 | $44,108 |
| 1996 | 52,415 |
| 1997 | 44,495 |
| 1998 | 41,317 |
| 1999 | 48,773 |

OPINION

Petitioner concedes that petitioner's claimed Aldus Green loss for each of the years at issue is a passive activity loss as defined in section 469(d)(1) and that section 469(a) disallows each such loss.[3] It is petitioner's position, however, that the application of section 469 to petitioner's claimed Aldus Green

---

[3]Petitioner also concedes that he is liable for additions to tax under sec. 6651(a)(1) for the taxable years 1996 and 1997 and for accuracy-related penalties under sec. 6662(a) for all the taxable years at issue.

loss for each of the years at issue violates the Due Process Clause of the Fifth Amendment (Due Process Clause) to the United States Constitution (Constitution) and that therefore he should be allowed to offset each such loss against his income from sources other than passive activities for each such year. (We shall refer to income from sources other than passive activities as other income.)

In support of his position under the Due Process Clause, petitioner argues that section 469 is retroactive and that the retroactive application of section 469 to petitioner's claimed Aldus Green loss for each of the years at issue is unconstitutional. In further support of his position, petitioner argues that the transitional rule that Congress provided in enacting section 469 into the Code (transitional rule) violates his equal protection rights under the Due Process Clause because it treats him differently than certain other taxpayers.

The Due Process Clause provides that "No person shall be * * * deprived of life, liberty, or property, without due process of law". The Due Process Clause provides protection against Federal discriminatory action "so unjustifiable as to be violative of due process". Shapiro v. Thompson, 394 U.S. 618, 642 (1969); see Nicholas v. Tucker, 114 F.3d 17, 19 (2d Cir. 1997). The Due Process Clause also has been held to incorporate the Equal Protection Clause of the Fourteenth Amendment to the

Constitution.  <u>Johnson v. Robison</u>, 415 U.S. 361, 364-365 n.4 (1974); <u>Hammond v. Lenfest</u>, 398 F.2d 705, 709 n.6 (2d Cir. 1968).

Before considering petitioner's constitutional arguments, we shall summarize in pertinent part the legislative history and provisions of section 469.  On October 22, 1986, Congress enacted section 469 into the Code in the Tax Reform Act of 1986, Pub. L. 99-514 (1986 Act or TRA 1986), sec. 501(a), 100 Stat. 2233.  In the report of the Senate Committee on Finance (Senate Finance Committee Report) with respect to the 1986 Act, that committee set forth the following reasons for enacting section 469:

> In recent years, it has become increasingly clear that taxpayers are losing faith in the Federal income tax system.  This loss of confidence has resulted in large part from the interaction of two of the system's principal features: its high marginal rates * * *, and the opportunities it provides for taxpayers to offset income from one source with tax shelter deductions and credits from another.
>
> The prevalence of tax shelters in recent years * * * has been well documented. * * *
>
> Such patterns give rise to a number of undesirable consequences, even aside from their effect in reducing Federal tax revenues.  Extensive shelter activity contributes to public concerns that the tax system is unfair, and to the belief that tax is paid only by the naive and the unsophisticated.  This, in turn, not only undermines compliance, but encourages further expansion of the tax shelter market, in many cases diverting investment capital from productive activities to those principally or exclusively serving tax avoidance goals.
>
> The committee believes that the most important sources of support for the Federal income tax system are the average citizens who simply report their income (typically consisting predominantly of items such as salaries, wages, pensions, interest, and dividends) and

pay tax under the general rules. To the extent that these citizens feel that they are bearing a disproportionate burden with regard to the costs of government because of their unwillingness or inability to engage in tax-oriented investment activity, the tax system itself is threatened.

Under these circumstances, the committee believes that decisive action is needed to curb the expansion of tax sheltering and to restore to the tax system the degree of equity that is a necessary precondition to a beneficial and widely desired reduction in rates. So long as tax shelters are permitted to erode the Federal tax base, a low-rate system can provide neither sufficient revenues, nor sufficient progressivity, to satisfy the general public that tax liability bears a fair relationship to the ability to pay. In particular, a provision significantly limiting the use of tax shelter losses is unavoidable if substantial rate reductions are to be provided to high-income taxpayers without disproportionately reducing the share of total liability under the individual income tax that is borne by high-income taxpayers as a group.

S. Rept. 99-313, at 713-714 (1986), 1986-3 C.B. (Vol. 3) 713-714.

In the Senate Finance Committee Report, the Senate Committee on Finance focused specifically on the use of rental activities for tax shelter purposes, such as the use by Aldus Green of rental activities for such purposes. That report stated in pertinent part:

The extensive use of rental activities for tax shelter purposes under present law, combined with the reduced level of personal involvement necessary to conduct such activities, make clear that the effectiveness of the basic passive loss provision could be seriously compromised if material participation were sufficient to avoid the limitations in the case of rental activities.

Id. at 718.

Having summarized the concerns of Congress in enacting section 469 into the Code, we shall now summarize certain provisions of that section that are pertinent here.  Pursuant to section 469(a), a taxpayer is not allowed to offset a passive activity loss for the taxable year against other income for such year.  For purposes of section 469, a passive activity loss for the taxable year is the amount, if any, by which the aggregate losses from all passive activities for the taxable year exceed the aggregate income from all passive activities for such year.  Sec. 469(d)(1); sec. 1.469-2T(b)(1), Temporary Income Tax Regs., 53 Fed. Reg. 5711 (Feb. 25, 1988).  The term "passive activity" is defined in pertinent part as any activity in which the taxpayer does not materially participate.  Sec. 469(c)(1).  Any rental activity is a passive activity, regardless whether the taxpayer materially participates in the activity.  See sec. 469(c)(2).

Under section 469(b), a passive activity loss is treated as a deduction allocable to the passive activity giving rise to such loss for the succeeding taxable year.  Under that section, a passive activity loss may be carried forward indefinitely.  In addition, section 469(g)(1) provides in pertinent part:

SEC. 469. PASSIVE ACTIVITY LOSSES AND CREDITS LIMITED.

   *       *       *       *       *       *       *

    (g) Dispositions of Entire Interest in Passive Activity.--If during the taxable year a taxpayer dis-

poses of his entire interest in any passive activity (or former passive activity), the following rules shall apply:

>    (1) Fully taxable transaction.--

>    (A) In general.--If all gain or loss realized on such disposition is recognized, the excess of--

>    (i) any loss from such activity for such taxable year (determined after the application of subsection (b)), over

>    (ii) any net income or gain for such taxable year from all other passive activities (determined after the application of subsection (b)),

shall be treated as a loss which is not from a passive activity.

We now turn to petitioner's arguments. We first address his argument that section 469 is retroactive. Petitioner maintains that section 469 is retroactive because:

>    The effect of the 1986 Act passive loss provisions is to deny a current deduction for depreciation (i.e., a segment of the expenditure) for a property already purchased, and for interest on a mortgage loan already committed, to the extent that said deductions exceed the net operating income from the property. In this case, the expenditures were made by the Partnership [Aldus Green] - and the taxpayer made his investment in the Partnership - before the law was enacted or proposed and the passive loss rule is disallowing the deduction for the expenditure.

In support of his argument that section 469 is retroactive, petitioner contends that he decided to invest in Aldus Green in

1984.[4]  According to petitioner, "Based on the tax incentives in place at that time, Petitioner reasonably expected that he would be allowed to deduct tax losses from the Partnership" and "would not have made the investment if he knew that the losses from the project could not be offset against his compensation and portfolio income, since in that case, there would be no economic return from the investment."  Petitioner maintains that he was "induced to make an investment based upon the prior set of tax rules deliberately enacted by Congress to induce such investment." From those premises, petitioner argues that section 469 is retroactive and that such retroactivity is unconstitutional because it violates the Due Process Clause.

Before considering petitioner's argument that section 469 is unconstitutionally retroactive, we note that the grounds on which petitioner relies to support that argument are similar to the grounds on which the taxpayer relied in United States v. Carlton, 512 U.S. 26 (1994), to support his argument that the tax statute involved there was unconstitutionally retroactive.  In Carlton, the taxpayer, the executor of an estate, maintained that the retroactive amendment of a Federal estate tax provision (section

---

[4]With respect to petitioner's contention that he made his investment in Aldus Green in 1984, respondent states on brief: "We note that petitioner offered no evidence that his investment in AGC [Aldus Green] actually was made two years before the enactment of sec. 469, nor was the date of his investment in AGC contained in the Stipulation of Facts filed in this case."

2057) violated the Due Process Clause because he "specifically and detrimentally relied on the preamendment version", id. at 33, of that provision when he engaged in a transaction prior to its amendment by Congress. Id. In rejecting the taxpayer's position, the Supreme Court of the United States observed that the taxpayer's

> reliance alone is insufficient to establish a constitutional violation. Tax legislation is not a promise, and a taxpayer has no vested right in the Internal Revenue Code. Justice Stone explained in Welch v. Henry, 305 U.S., at 146-147:

>> "Taxation is neither a penalty imposed on the taxpayer nor a liability which he assumes by contract. It is but a way of apportioning the cost of government among those who in some measure are privileged to enjoy its benefits and must bear its burdens. Since no citizen enjoys immunity from that burden, its retroactive imposition does not necessarily infringe due process ...."

> Moreover, the detrimental reliance principle is not limited to retroactive legislation. An entirely prospective change in the law may disturb the relied-upon expectations of individuals, but such a change would not be deemed therefore to be violative of due process.

Id. at 33-34.

We consider now whether, as petitioner argues, section 469 is retroactive. As pertinent here, section 469(a) applies only to a passive activity loss as defined in section 469(d)(1) for a taxable year that began after December 31, 1986. See TRA 1986 sec. 501(c), 100 Stat. 2241. Section 469(a) does not apply to any loss for any taxable year that began prior to January 1,

1987.  See <u>id.</u>  We hold that section 469 is not retroactive.[5]

We next address petitioner's argument that the transitional rule that Congress provided in enacting section 469 into the Code violates his equal protection rights under the Due Process Clause.  We first describe the transitional rule that Congress provided, TRA 1986 sec. 502, 100 Stat. 2241, when it enacted section 469 into the Code.  That transitional rule provides that any loss sustained by certain investors[6] with respect to inter-

---

[5]See <u>Polone v. Commissioner</u>, T.C. Memo. 2003-339, affd. 479 F.3d 1019 (9th Cir. 2007); cf. <u>United States v. Carlton</u>, 512 U.S. 26, 33-34 (1994).

[6]The investors qualifying under the transitional rule are so-called qualified investors.  The term "qualified investor" is defined to mean, in general:

> any natural person who holds (directly or through 1 or more entities) an interest in a qualified low-income housing project--
>
> (A) if--
>
>       (i) in the case of a project placed in service before August 16, 1986, such person held an interest in such project on August 16, 1986, and the taxpayer made his initial investment after December 31, 1983, or
>
>       (ii) in the case of a project not described in subparagraph (A), such investor held an interest in such project on December 31, 1986, and
>
>       (B) if such investor is required to make payments after December 31, 1986, of 50 percent or more of the total original obligated investment for such interest.

TRA 1986 sec. 502(d), 100 Stat. 2242.

ests in certain low-income housing projects[7] for any taxable year
in a prescribed period[8] is not to be treated as a loss from a

---

[7]The low-income housing projects qualifying under the tran-
sitional rule are so-called qualified low-income housing pro-
jects.  The term "qualified low-income housing project" is
defined to mean:

any project if--

(1) such project meets the requirements of clause
(i), (ii), (iii), or (iv) of section 1250(a)(1)(B) as
of the date placed in service and for each taxable year
thereafter which begins after 1986 and for which a
passive loss may be allowable with respect to such
project,

(2) the operator certifies to the Secretary of the
Treasury or his delegate that such project met the
requirements of paragraph (1) on the date of the enact-
ment of this Act [October 22, 1986] (or, if later, when
placed in service) and annually thereafter,

(3) such project is constructed or acquired pursu-
ant to a binding written contract entered into on or
before August 16, 1986, and

(4) such project is placed in service before
January 1, 1989.

TRA 1986 sec. 502(c), 100 Stat. 2242.

[8]The period prescribed under the transitional rule is a so-
called relief period.  The term "relief period" is defined to
mean:

the period beginning with the taxable year in which the
investor made his initial investment in the qualified
low-income housing project and ending with whichever of
the following is the earliest--

(1) the 6th taxable year after the taxable
year in which the investor made his initial in-
vestment,

(continued...)

passive activity for purposes of section 469.  TRA 1986 sec. 502(a), 100 Stat. 2241.

In support of his argument that the transitional rule violates his equal protection rights under the Due Process Clause, petitioner contends that, because he is not entitled to the relief provided by the transitional rule, Congress treated him differently than certain other taxpayers entitled to such relief.  According to petitioner, the provisions of the transitional rule are "arbitrary, capricious and unreasonable".  In support of that claim, petitioner asserts:

> In this case, the conditions for the 1986 Act exemptions for low and moderate income housing are worse than unreasonable, that is, worse than conditions without any reasonable basis.  The conditions evidence, and indeed were meant to evidence, an intention by the opponents of any exemption to take private property without compensation.

> The exemption is conditional upon the taxpayer not having yet paid in over 50% of the taxpayer's investment commitment.  It is obvious - and beyond dispute - that the purpose of this condition was to encourage the taxpayer to pay in the balance of his investment - and this was the very purpose of the tax incentives for subsidized housing in the first place.  However, there is no exemption for the investor who has already paid

---

[8](...continued)
>      (2) the 1st taxable year after the taxable year in which the investor is obligated to make his last investment, or

>      (3) the taxable year preceding the 1st taxable year for which such project ceased to be a qualified low-income housing project.

TRA 1986 sec. 502(b), 100 Stat. 2241.

in his investment, even if he is an investor in the same project as a taxpayer who has not yet paid in his investment.

Hence, limiting the exemption to investors who have not yet paid in over 50% of their investments reflects a purpose antithetical to our system of jurisprudence, that is, perpetuating a fraud by having the government pay a further portion of the consideration it promised to persons who had not yet completed their performance in reliance on the government's promised consideration to the persons who had already fully performed in reliance upon the government promise. [Reproduced literally.]

In order to prevail on his equal protection argument, petitioner must show that the transitional rule was not premised upon a rational basis, see Regan v. Taxation With Representation, 461 U.S. 540, 547-548 (1983), and instead was premised upon an impermissible basis such as race, religion, or the desire to prevent the exercise of petitioner's constitutional rights, see United States v. Berrios, 501 F.2d 1207, 1211 (2d Cir. 1974).

We reject petitioner's argument that the transitional rule violates his equal protection rights under the Due Process Clause. In enacting section 469, Congress considered whether any relief from the application of section 469(a) was appropriate. After giving consideration to that question, Congress decided to provide in the transitional rule certain relief, but only for certain taxable years, to certain taxpayers in certain circumstances.[9]

---

[9]Congress also decided to provide in sec. 469(m) certain

(continued...)

On the instant record, we find that petitioner has failed to carry his burden of establishing that the transitional rule was not premised upon a rational basis and instead was based upon a

---

[9](...continued)
other relief, but only for certain taxable years, to taxpayers who were not entitled to the relief provided by the transitional rule and who therefore were subject to sec. 469.  Sec. 469(m) provides in pertinent part:

> SEC. 469. PASSIVE ACTIVITY LOSSES AND CREDITS LIMITED.
>
> *       *       *       *       *       *       *
>
> (m) Phase-in of Disallowance of Losses and Credits for Interest Held Before Date of Enactment.--
>
> (1) In general.--In the case of any passive activity loss or passive activity credit for any taxable year beginning in calendar years 1987 through 1990, subsection (a) shall not apply to the applicable percentage of that portion of such loss (or such credit) which is attributable to preenactment interests.
>
> (2) Applicable percentage.--For purposes of this subsection, the applicable percentage shall be determined in accordance with the following table:

| In the case of taxable years beginning in: | The applicable percentage is: |
| --- | --- |
| 1987 | 65 |
| 1988 | 40 |
| 1989 | 20 |
| 1990 | 10 |

Sec. 469(m)(3)(B)(i) defines the term "pre-enactment interest" to mean, in general, "any interest in a passive activity held by a taxpayer on the date of the enactment of the Tax Reform Act of 1986, and at all times thereafter."  Petitioner appears to have qualified for the relief from the application of sec. 469(a) that Congress provided in sec. 469(m).

constitutionally impermissible standard.  We hold that the transitional rule does not violate petitioner's equal protection rights under the Due Process Clause.

We have considered all of the parties' contentions and arguments that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing and the concessions of petitioner,

<u>Decision will be entered for respondent</u>.