[Civ. No. 66879. Second Dist., Div. Two. Sept. 12, 1984.]

RICHARD A. APPEL et al., Plaintiffs and Respondents, v.
MILTON BURMAN et al., Defendants and Appellants.

**COUNSEL**

Freid & Goldsman and Gary J. Cohen for Defendants and Appellants.

Blum, Propper & Hardacre and Ivon B. Blum for Plaintiffs and Respondents.

**OPINION**

**BEACH, J.—**

NATURE OF APPEAL:

Appellants claim that the trial court erred as a matter of law in granting respondents a declaratory judgment on the issue of the location of the actual boundary between the parties' properties and awarding respondents special damages, attorneys fees and costs as recompense for the disparagement of title they suffered at the hands of appellants.

SUMMARY OF FACTS AND PROCEDURE:

Appellants and respondents are neighbors involved in a boundary dispute. In June 1980 respondents informed appellants that respondents intended to

construct an addition to their home. In order to build the addition, respondents informed appellants that it would be necessary to move an existing privacy fence six feet south to the recorded boundary line between the two properties and that a utility pole located next to the privacy fence would also have to be moved to the location of the easement granted to General Telephone Company encompassing two feet on both sides of the recorded boundary line. Respondents had previously contacted the utility and had remitted $100 to the utility, the department of water and power, to begin the process of having the pole moved. Respondents had also acquired a building permit for the construction.

On August 1, 1980, appellants caused their attorney, Mr. Freid, to write a letter to respondents in which Mr. Freid stated that appellants considered the privacy fence to be the actual agreed upon boundary between the two properties. A similar letter was sent on the same date by Attorney Freid to the department of water and power. Respondents continued to attempt to have the utility pole moved without resorting to litigation until June 1981, when the department of water and power contacted respondents and stated that the pole would not be moved until respondents reached an agreement with appellants. Respondents had attempted to reach such an agreement with appellants up until the time respondents filed their action for declaratory relief. Prior to sending the letter to respondents and to the department of water and power, appellants had a survey made of their property on July 23, 1980. This survey showed that the privacy fence was not the recorded boundary line. Prior owners and an employee of the builder of respondents' residence also testified that the recorded boundary line and not the fence was understood as the actual boundary.

On June 17, 1981, respondents filed a complaint for declaratory relief in which respondents sought to enjoin appellants from further interference with the proposed construction and sought damages against appellants for knowingly, wilfully and without legitimate purpose having made a claim to a portion of respondents' property.

Respondent Richard Appel testified as an expert witness in his capacity as an architect for the purpose of establishing the cost of construction at the intended starting date in 1980 as opposed to the cost of construction at the time of trial in 1982. Following a court trial, respondents were awarded $34,901 as damages caused by appellants' slander of title. These damages represented the difference in cost between beginning construction in 1980 as opposed to 1982. An additional $15,000 was also awarded for attorneys fees and costs in pursuing the action to clear respondents' title. An injunction against further interference with the building of the addition was also

granted. A statement of decision was filed and the instant appeal was then commenced.

ISSUES ON APPEAL:

(1) Did the trial court err in refusing to apply the doctrine of agreed boundary in favor of appellants? (2) Was a cause of action for slander of title sufficiently pleaded and were the elements of that tort sufficiently proved? (3) Did respondent, Richard Appel, properly qualify as an expert witness regarding construction costs? (4) Should the cost estimate prepared by Lou Stillwell for Richard Appel have been excluded as hearsay? (5) Did the trial court err in failing to apply the doctrines of estoppel and laches?

### (1) *The Doctrine of Agreed Boundary*

As stated in *Allen* v. *McMillion* (1978) 82 Cal.App.3d 211, 214-215 [147 Cal.Rptr. 77], "The requisites for an agreed boundary are: (1) uncertainty as to the true boundary; (2) an agreement between coterminous owners as to the true boundary; (3) acquiescence to the line so fixed for a period equal to the statute of limitations; and (4) the boundary so fixed must be identifiable on the ground. [Citations.]" Substantial evidence exists to support the finding of the trial court that there was neither any uncertainty as to the true boundary nor an agreement between coterminous owners as to any boundary other than the recorded boundary. Since substantial evidence does support the trial court and that determination must be viewed in the light most favorable to respondents, the trial court's decision vis-à-vis the agreed upon boundary theory must stand. (*Prudential Ins. Co.* v. *Fromberg* (1966) 240 Cal.App.2d 185 [49 Cal.Rptr. 475]; *Wynn* v. *Wynn* (1959) 170 Cal.App.2d 484, 486 [338 P.2d 930]; *Overton* v. *Vita-Food Corp.* (1949) 94 Cal.App.2d 367, 370 [210 P.2d 757]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 245-254, pp. 4236-4246.)

### (2) *The Slander of Title Action*

#### (a) The sufficiency of the pleadings

The trial court was satisfied that the complaint filed contained sufficient facts to state a cause of action for slander of title. We agree with appellants that the complaint did not put them on notice that they would be required to defend a cause of action for slander of title. However, respondents' trial brief and the trial court's query at the inception of trial concerning the basis for requesting attorneys fees both put defendants on notice that they would be required to defend an action for slander of title and such a defense was rendered.

Neither respondents nor the trial court saw fit to amend the complaint to explicitly state the cause of action for slander of title. ■ Therefore, quite formally a variance between the proof and the complaint does exist. However, that variance must be deemed harmless where as here "it is clear that, if a reversal were ordered, the complaint could be amended and the objectionable evidence would be perfectly proper on the retrial, with the result that the same judgment would be rendered. (*Moore* v. *McDonald* (1932) 122 C.A. 61, 72, 9 P.2d 556; *Karle* v. *Reed* (1934) 1 C.A.2d 144, 148, 36 P.2d 150. . . .)" (6 Witkin, Cal. Procedure, (2d ed. 1971) Appeal, § 302, p. 4286.)

(b)  Proof of slander of title

The Restatement Second of Torts describes the tort of slander of title as a subspecie of the more general tort of publication of an injurious falsehood. At section 623A, the Restatement sets out "Liability for Publication of Injurious Falsehood-General Principle": "One who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if (a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity." (Rest. 2d Torts, § 623A, p. 334.)

The Restatement of Torts then describes "Disparagement of Property— Slander of Title: The rules on liability for the publication of an injurious falsehood stated in section 623A apply to the publication of a false statement disparaging another's property rights in land, chattels or intangible things, that the publisher should recognize as likely to result in pecuniary harm to the other through the conduct of third persons in respect to the other's interests in the property." (Rest. 2d Torts, § 624, pp. 342-343.)

■  The elements of the tort to be gleaned from these statements have traditionally been held to be publication, falsity, absence of privilege, and disparagement of another's land which is relied upon by a third party and which results in a pecuniary loss. The trial court made a finding in which it drew the inference from appellants' own testimony that to protect their privacy they used a claim of agreed upon boundary as an excuse to prevent the respondents from constructing their improvements for as long as possible without any sincere belief that appellants had any right, title or interest in the respondents' property. Appellants published the disparagement to several entities principally the department of water and power which agency then refused to move the power pole which resulted in damage to the respondents, the Roscomare Valley Homeowners Association, the Title In-

surance and Trust Co., and the neighbors of appellants and respondents. Since the publication of this falsehood was found to be with malice, it could not be privileged. As discussed, *infra,* the malicious publication did result in pecuniary loss.

The trial court's judgment and findings are supported by substantial evidence. Since that evidence must be considered in the light most favorable to respondents, the trial court's findings must be upheld. (*Overton* v. *Vita-Food Corp., supra,* 94 Cal.App.2d 367, 370; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 245-254, pp. 4236-4246.)

(c) The damages

■ While the damages requested, the increase in cost to construct respondents' addition, are novel in a slander of title action, they are justified. Although the extant cases deal mainly with the loss incurred as the result of losing a purchaser, it is clear in California that a slander of title can result where no purchaser is present. (*Glass* v. *Gulf Oil Corp.* (1970) 12 Cal.App.3d 412, 424 [96 Cal.Rptr. 902].) The Second Restatement of Torts defines Pecuniary Loss at section 633 as: "(1) The pecuniary loss for which a publisher of injurious falsehood is subject to liability is restricted to (a) the pecuniary loss that results directly and immediately from the effect of the conduct of third persons, including impairment of vendibility *or value* caused by disparagement, and (b) the expense of measures reasonably necessary to counteract the publication, including litigation to remove the doubt cast upon vendibility or value by disparagement.

"(2) This pecuniary loss may be established by (a) proof of the conduct of specific persons, or (b) proof that the loss has resulted from the conduct of a number of persons whom it is impossible to identify." (Rest. 2d Torts, § 633, p. 355, italics added.)

In the instant case disparagement of respondents' title led to specific conduct by the department of water and power in that they refused to move the power pole which resulted by the time of trial in a two-year delay in the construction of respondents' addition. While the disparagement may not have affected the vendibility of respondents' home at the time the disparagement was made in the sense that respondents could have sold the property with or without building an addition to the home, nonetheless, the disparagement resulted in a loss of value to the property in the amount of $34,901 which was held to be the increase in cost to add the addition to the home from 1980 to 1982. Regardless of how much the property could be sold for, then or now, this particular sum of money could never be recovered other than in the instant action.

The closest case factually to the instant case which we have discovered is from Montana. In *Jumping Rainbow Ranch* v. *Conklin* (1975) 167 Mont. 367 [538 P.2d 1027], the Montana Supreme Court upheld damages of $5,000 in a slander of title action which damages were $4,000 for lost profits and $1,000 punitive damages. In *Jumping Rainbow Ranch* the profits were lost due to the fact that the owners of the ranch were unable to continue with improvements to the property which would have allowed them to grow more trout for sale. The inability to proceed with improvements was caused by a cloud on their title due to the recording of a false deed by defendants. Similarly, in the instant case, the inability to proceed with improvements, the addition to respondents' home, occasioned a particular loss, the increase in cost to have that addition built.

(d) Attorneys fees

The trial court in its statement of decision cites the case of *Glass* v. *Gulf Oil Corp.*, *supra*, 12 Cal.App.3d 412, 437, for the proposition that attorneys fees "even those incurred in the same action, in removing the doubt cast by the disparagement of title are a proper element of damages to be awarded to the plaintiffs in this slander of title action." Appellants concede and we agree that since damages were properly awarded in this case, attorneys fees are also a proper element of the damages.

(3) *The Qualification of Respondent as an Expert Witness and the Use of a Hearsay Statement in His Determination of the Increased Cost of Construction*

■ The trial court's determination of the qualifications of an expert witness is within its sound discretion. (Witkin, Cal. Evidence (2d ed. 1966) § 1175, p. 1088.) We find no abuse of that discretion in the trial court's determination that respondent Richard Appel was an expert in the area of cost estimating for construction projects.

Respondents' damages were based on the difference between the cost of construction in 1980 when they had intended to build an addition to their home and the cost of construction in 1982, the time of trial. In arriving at the difference between the construction costs over the intervening two years respondents used the services of a professional cost estimator. Respondent Richard Appel is himself a professional architect and after the preparation of the cost estimates by the cost estimator, respondent compared the compilations made by the estimator with data on construction costs contained in various professional publications available to him at his office. Respondent also testified that it was a common practice in the architecture industry to hire a cost estimator to do the actual mathematical computation of costs and

then to check the work done by that individual against the professional publications available.

■ It has long been held in this state that an expert opinion on the valuation of property or services may be based in whole or in part on hearsay publications provided that they are of the type reasonably relied upon by experts in the field. "It must, we think, be conceded that, as a general rule, an expert witness is not permitted to give an opinion which is based upon information gained from the statements of other persons outside the courtroom for the obvious reason that the opinion of the witness thus depends entirely upon purely hearsay declarations [citations]. However, it is established that a witness who is called to testify regarding the value of property should, so far as is practicable, detail the facts upon which his conclusion or judgment is based even though the facts upon which he relies would be incompetent to affect value in the particular case and even though the facts which form the basis of his conclusion may have been derived from inquiries made of others or from correspondence [citation]. This principle is exemplified in cases where an expert is permitted to give an opinion as to value which is based entirely on knowledge gained from inadmissible sources. [Citations.] As was remarked by Holmes, C. J., in *National Bank* v. *New Bedford,* 175 Mass. 257 [56 N.E. 288]: 'An expert may testify to value, although his knowledge of details is derived chiefly from inadmissible sources, because he gives the sanction of his general experience.'" (*McElligott* v. *Freeland* (1934) 139 Cal.App.143, 157-158 [33 P.2d 430]; see also *People* ex rel. *Dept. of Public Works* v. *Donovan* (1962) 57 Cal.2d 346, 352 [19 Cal.Rptr. 473, 369 P.2d 1].) In the instant case respondent Richard Appel testified that it is the general practice in his industry to use a cost estimator to perform the actual mathematical computation of an estimate. Respondent also testified that he personally verified that estimate against professional data available to him at his own offices. Respondent established that the verification of the cost estimate prepared for him rendered that estimate reasonably reliable. A showing of necessity is not required in the instant case in that the estimate prepared was verified through the use of professional technical literature that reasonably may be relied upon by an expert in forming an opinion. Respondent's opinion as to the estimated construction costs was properly admitted and, therefore, the actual admission of the professional cost estimate was merely cumulative.

*(4) Laches and Estoppel*

The theories of estoppel and laches advanced by appellants are entirely without merit. The trial court found, based upon substantial evidence that there was no uncertainty on respondents' part as to the actual recorded boundary line. ■ The trial court also found that each neighbor main-

tained the vegetation on the sloping area of each other neighbor's property for merely aesthetic considerations. Since laches or estoppel could only apply, in this case, if the asserted possession of the sloped area in question was actually adverse, and the trial court properly held that the maintenance of the vegetation on the sloped area was not adverse, respondents were justified in believing that there was no dispute until they were advised of one in 1980. Their actions from 1980 to 1981 were consistent with a desire to ameliorate the dispute without litigation. The litigation commenced in 1981 was timely and was not barred on either the theory of laches or estoppel.

(5) *Attorneys Fees on Appeal*

Since the damages awarded in this case are novel in a slander of title action, appellants were justified in pursuing this appeal regardless of the fact of his disparagement of respondents' title. This being the case we decline to add to the damages already recovered by respondents.

The judgment is affirmed.

Compton, Acting P. J., and Gates, J., concurred.