Filed 12/19/24  Shelton v. MCLP Asset Co. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| ALDA SHELTON, Plaintiff and Appellant, v. MCLP ASSET COMPANY, INC., et al., Defendants and Respondents. | B330488 (Los Angeles County Super. Ct. No. 22VECV00361) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Valerie Salkin, Judge.  Reversed with directions.

Alda Shelton, in pro. per., for Plaintiff and Appellant.

Akerman, Parisa Jassim and Jacqueline Foroutan for Defendants and Respondents.

————————————

Plaintiff and appellant Alda Shelton appeals from a judgment following an order sustaining a demurrer without leave to amend in favor of defendants and respondents MCLP Asset Company, Inc. (MCLP), and Newrez LLC, doing business as Shellpoint Mortgage Servicing (Shellpoint).  In her complaint, Shelton alleged she entered into an agreement to purchase real property, but the defendants falsely represented to the property owner that the loan on the property had been assigned to MCLP and payments were due to Shellpoint, delaying the close of escrow and causing Shelton to lose a favorable interest rate.  On appeal, Shelton contends the allegations of the complaint are sufficient to state causes of action for slander of title, violation of Civil Code section 1512, negligence, intentional interference with contract, and intentional and negligent interference with economic advantage.  We agree that the complaint states causes of action for intentional interference with contract and intentional interference with economic advantage, and therefore, we reverse, with directions.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Nasrin Nino obtained a loan from Wells Fargo Bank for $650,000, secured by a deed of trust on real property located on Kelvin Place in Woodland Hills, which was recorded in December 2004.

---

[1] In accordance with the standard of review, we treat the facts alleged in the complaint as true, other than legal conclusions and facts contrary to matters which may be judicially noticed.  (See *Terminals Equipment Co. v. City and County of San Francisco* (1990) 221 Cal.App.3d 234, 241.)

2

In May 2021, Wells Fargo executed an assignment of the deed of trust, together with all liens and rights, to US Bank, N.A., as Trustee for the LB Igloo Series IV Trust claims. The assignment of the deed of trust to US Bank was recorded on May 17, 2021.

In October 2021, US Bank executed an assignment transferring the deed of trust and the note to Community Loan Servicing, LLC.

On December 4, 2021, Shelton, Jon Sherman, and Ramshin Daneshi entered into an agreement to purchase the Kelvin Place property from Nino.

US Bank's assignment of the deed of trust to Community was recorded on December 27, 2021.

Community did not execute an assignment of the trust deed to anyone, but on January 27, 2022, MCLP sent a notice to Nino with the heading, "NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF OWNERSHIP OF MORTGAGE LOAN (15 U.S.C. § 1641(g))." The notice stated, "You are receiving this notice because the ownership of your mortgage loan identified below has been sold, assigned, or transferred to MCLP ASSET COMPANY, INC. . . ." The notice stated Community was the current loan servicer and the date of sale/assignment/transfer was December 30, 2021. "MCLP ASSET COMPANY, INC. does not service your loan. The current servicer of your loan is Community Loan Servicing. . . . [¶] . . . ANY MORTGAGE PAYMENTS SHOULD CONTINUE TO BE SENT TO YOUR MORTGAGE SERVICER. SHOULD YOU HAVE ANY QUESTIONS REGARDING YOUR LOAN, PLEASE CONTACT THE SERVICER USING THE CONTACT INFORMATION SET

3

FORTH BELOW." The notice provided the mailing address and phone number for Community as the mortgage loan servicer.

A new creditor is required to provide certain information to the borrower in writing within 30 days after a mortgage is assigned, including the location where the transfer of ownership of the debt is recorded. (15 U.S.C. § 1641, subd. (g)(1))(D).) MCLP's notice stated, " . . . The location of the place where transfer of ownership of the debt is or may be recorded is the office of public land records or the recorder of deeds office for the county or local jurisdiction where the property is located." The notice added that the transfer of ownership did not change the address to send mortgage loan payments. Despite MCLP's notice, however, MCLP had not obtained an assignment of the trust deed.

On February 7, 2022, less than two weeks after MCLP's notice stating Community continued to be the servicer for the loan, Shellpoint sent a notice to Nino stating that the servicing of the loan had been transferred from Community to Shellpoint effective February 1, 2022. Despite Shellpoint's notice, however, there was no written authority from Community or MCLP authorizing Shellpoint to collect the payments on Nino's loan.

On February 8, 2022, Shellpoint provided a mortgage statement to Nino stating her loan was in default in the amount of $94,410, and informing her to make loan payments to Shellpoint. The account history listed on the notice showed an unpaid balance of $75,093.36 in September 2021, unpaid balances for each following month, and a total unpaid balance of $94,410.93 due March 1, 2022. The statement noted, "Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in

4

bankruptcy. [¶] We are sending this statement to you for informational and compliance purposes only. It is not an attempt to collect a debt against you." (Emphasis omitted.)

Nino and the buyers wanted to close the purchase of the property by March 10, 2022. Shelton and Sherman had an interest rate lock of 3.875 percent secured for a loan from California Bank and Trust that would expire on March 10, 2022. Shelton, on behalf of the buyers and Nino, sent an email to Shellpoint requesting the payoff amount.

On February 24, 2022, Shellpoint provided a payoff demand for $489,271 to be paid to an account in Shellpoint's name. Shellpoint could not provide any proof, however, that the trust deed had been assigned to MCLP or that Shellpoint was authorized to service the loan. No title insurance could be obtained to insure a payment of $489,271 to an alleged loan servicer who could not prove its authority and whose alleged principal was not in the recorded chain of title to the trust deed.

On March 1, 2022, Shellpoint sent an email to Daneshi stating there was no assignment document in Shellpoint's file and suggesting he might have better luck with the prior servicer, "Bayview."

Shelton sent a draft complaint to Shellpoint alleging causes of action for slander of title and quiet title based on Shellpoint's demand for payment without proof that the loan had been assigned to MCLP or the servicing to Shellpoint. After receiving the pleading, Shellpoint's attorney Chandler Thompson called Shelton. Shelton informed him that she could not buy the property if title insurance could not be obtained, and she would not pay $489,271 or complete the sale unless an assignment of the trust deed from Community to MCLP and/or Shellpoint had

5

been recorded.  Thompson admitted no assignment of the loan had been executed, and as a result, no assignment could be recorded.  He said he would try to obtain an assignment and record it.

Thompson sent Shelton a copy of a "LIMITED POWER OF ATTORNEY" that MCLP had executed a year earlier, on April 28, 2021, that was in effect from March 19, 2021, to May 1, 2022, or until such time as Shellpoint no longer serviced the mortgage loans that were the subject to the parties' agreement. The power of attorney did not refer to Nino's loan or the Kelvin Place property.  It did not authorize Shellpoint to act as the servicer for any particular loan, but instead referred to loans listed in a separate servicing agreement that was not attached. The power of attorney simply authorized Shellpoint to execute certain types of documents and accept funds for short sales.

On March 9, 2022, Thompson sent an email to Shelton stating, "I hope you will give me all the time available to finalize the documentation of the service-transfer of this loan.  As I said before, we're committed to release the lien as required under [California] law when the loan is paid in full.  Have you confirmed with the title company what is required in that respect?  [¶]  I can't stop you from suing, but I can tell you these issues you are raising are just part of the standard process of the mortgage servicing industry.  There is no dispute who owns your client's loan or who can release the mortgage – it's simply a matter of finalizing the proper documentation after the most recent transfer of servicing from [Community] to Shellpoint.  No 'wrong' has occurred to your client.  As I said before, we're on the hook for releasing the mortgage after it's paid, following the requirements of [California] law.  A lawsuit is completely

6

unnecessary at this stage – while we are finalizing some necessary paperwork on our end and not asking you to delay the sale in any way on your end – so I hope you will give us as much time as you can afford before filing."

Later the same day, Thompson sent another email to Shelton stating, "[T]his loan recently transferred to us for servicing. We are having a slight delay obtaining the power of attorney that follows a service-transfer and would entitle us to execute an assignment or other documents for both the owner of the loan and the prior servicer – who in this case is also the beneficiary of record on behalf of the owner. We are working diligently to obtain the proper documentation to enable us to execute the assignment. There is nothing particularly abnormal about any of this. [¶] But we can still process a payoff for you right now – there is no reason to delay any sale. We will get the assignment and the release processed within the time frame allowed by law. I don't see any evidence that 'we are costing [your] client a fortune.' If the sale is delayed, it would appear to be something you are voluntarily choosing to do yourself, without any valid reason. Your speculation that MCLP or Goldman [Sachs] are attempting to fraudulently convince you that they own the loan when they do not is unsupported by any evidence and is completely off base. So our position would be that it is not us that is causing any damage, although, again, I've seen nothing indicating any real damage has occurred or will occur in the near future."

Shelton believed making a payment to a self-proclaimed trust-deed holder outside the chain of title would be risky and commercially unreasonable. The payment could subject the property owner to double claims from the record title holder,

Community, or any party recording an assignment of the trust deed before MCLP. As a result of MCLP's inability or refusal to record an assignment, Shelton and Sherman lost their beneficial rate lock on March 10, 2022. No insurer would lend on a property with title problems on the ownership of the trust deed.

On March 11, 2022, Shelton, Daneshi, and Nino filed the instant action against several defendants, including MCLP and Shellpoint, for slander of title, quiet title, interference with prospective economic advantage, and interference with contract.

Within days after the lawsuit was filed, on March 16, 2022, Community executed an assignment transferring the deed of trust on the Kelvin Place property, along with the note, to an entity named Bayview Dispositions VI, LLC. That same day, Bayview executed an assignment of deed of trust transferring the deed of trust, along with the note, to MCLP. The assignments from Community to Bayview and from Bayview to MCLP were both recorded on April 4, 2022.

Shelton, Daneshi, and Nino filed an amended complaint in June 2022. Shelton believes that after she threatened to file another lawsuit, MCLP executed a power of attorney authorizing Shellpoint to service Nino's loan and sent it to the escrow company handling the sale of the Kelvin Place property and/or the title company insuring the payoff.

On August 19, 2022, escrow closed on the purchase of the Kelvin Place property from Nino. Due to the increase in interest rates after March 10, 2022, Shelton and Sherman had to take out a loan for $637,500 at a rate of 5.875 percent, which was an increased cost of $278,280 over the life of the loan.

On November 23, 2022, Shelton, as the sole plaintiff acting in pro per, filed the operative second amended complaint against

8

MCLP for negligence and violation of Civil Code section 1512, and against Goldman Sachs, MCLP, and Shellpoint for slander of title, interference with contract, and interference with prospective economic advantage. Sherman assigned all damages accruing to him from the defendants' acts to Shelton. Shelton alleged MCLP's January 27, 2022 notice, and Shellpoint's notices on February 7, 8, and 24, 2022, falsely stated the entities to be paid, falsely implied that payment to MCLP or Shellpoint of the payoff amount would provide title free of the lien of the trust deed, and falsely implied the respective companies could provide a reconveyance granting clear title. MCLP and Shellpoint acted with reckless disregard for the truth or falsity of their publications. They knew, or should have known, that the buyer or equitable owner would act on their statements, refusing to pay off the trust deed or close a sale due to the inability to obtain title insurance.

Shelton alleged that she and Sherman were the equitable owners of the property as of December 2021, when they entered into the purchase agreement, and MCLP prevented them from paying the debt by demanding payment when MCLP had not been assigned the debt.

Shelton alleged that MCLP had a duty to record an assignment within 30 days, which MCLP breached if the trust deed really were transferred on December 30, 2021, as MCLP stated in its notice.

The buyers and sellers were in an economic relationship, which MCLP and Shellpoint knew. Shellpoint, acting for itself and as an agent of MCLP, falsely represented it was the new loan servicer when Community was still servicing the loan and falsely represented Shellpoint was entitled to receive payment.

9

MCLP and Shellpoint filed a demurrer to the second amended complaint.  They also filed a request for judicial notice of several documents.  Shelton opposed the demurrer.  MCLP and Shellpoint filed a reply.

A hearing was held on April 18, 2023.  The trial court sustained the demurrer without leave to amend and ordered the action dismissed with prejudice as to MCLP and Shellpoint.  Shelton filed a notice of appeal.  On May 23, 2023, the trial court entered a judgment dismissing the action as to MCLP and Shellpoint.

## DISCUSSION

### I.    Standard of Review

"We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense."  (*Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 725.)  "We assume the truth of properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and matters that are judicially noticeable."  (*Genis v. Schainbaum* (2021) 66 Cal.App.5th 1007, 1015.)

In addition, we do not assume the truth of contentions, deductions, or conclusions of law.  (*Aubry v. Tri–City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)  And "we give the complaint a reasonable interpretation, reading it in context."  (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320.)

## II.    Slander of Title

Shelton contends the complaint alleges a claim for slander of title.  We disagree, because the complaint fails to allege how the purchasers' loss resulted from the defendants' publication of a false statement to Nino.

"Disparagement of title occurs when a person, without a privilege to do so, publishes a false statement that disparages title to property and causes pecuniary loss."  (*Truck Ins. Exchange v. Bennett* (1997) 53 Cal.App.4th 75, 84 (*Truck*).)  "The elements of the tort are (1) a publication, (2) without privilege or justification, (3) falsity, and (4) direct pecuniary loss."  (*Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC* (2012) 205 Cal.App.4th 999, 1030 (*Sumner*).)

"If the publication is reasonably understood to cast doubt upon the existence or extent of another's interest in land, it is disparaging to the latter's title."  (*Sumner, supra*, 205 Cal.App.4th at p. 1030.)  "What makes conduct actionable is not whether a defendant succeeds in casting a legal cloud on plaintiff's title, but whether the defendant could reasonably foresee that the false publication might determine the conduct of a third person buyer or lessee."  (*Truck, supra*, 53 Cal.App.4th at p. 84.)  "The main thrust of the cause of action is protection from injury to the salability of property [citations], which is ordinarily indicated by the loss of a particular sale, impaired marketability or depreciation in value [citations]."  (*Sumner, supra*, 205 Cal.App.4th at p. 1030.)

Slander of title is "a subspecie of the more general tort of publication of an injurious falsehood."  (*Appel v. Burman* (1984)

11

159 Cal.App.3d 1209, 1214 (*Appel*).)  The rules that apply to publication of an injurious falsehood also apply to a claim for slander of title.  (Rest.2d Torts, § 624; *Appel, supra*, at p. 1214.)  "Publication of an injurious falsehood is its communication intentionally or by a negligent act to someone other than the person whose interest is affected."  (Rest.2d Torts § 630.)

Upon execution of the purchase agreement, Nino possessed legal title to the property, while Shelton and Sherman possessed equitable title.  (See *RC Royal Development & Realty Corp. v. Standard Pacific Corp.* (2009) 177 Cal.App.4th 1410, 1419.)  Nino is a separate party from the purchasers.  Shelton's contention is that false statements by MCLP and Shellpoint to Nino disparaged the title to a third party.  The complaint does not allege, however, that as a result of MCLP and Shellpoint's statements to Nino, Nino took a reasonably foreseeable action that caused Shelton to suffer direct pecuniary loss.

Shelton alleged title insurance could not be obtained, but she did not allege Nino applied for title insurance or Nino refused to close the sale without title insurance.  Instead, the complaint alleges Shelton refused to pay the purchase price without title insurance, and as a result of not being able to obtain title insurance and close the sale by a certain date, lost a favorable interest rate.  Regardless of whether Shelton's actions were reasonable under the circumstances, it was Shelton's conduct based on the allegedly false statements, not Nino's conduct, which resulted in the damages alleged.  Because there is no allegation that Nino's conduct, based on the false statements, caused Shelton to suffer pecuniary loss, the elements are not met and the demurrer was properly sustained as to slander of title.

## III. Violation of Civil Code Section 1512

Shelton contends that the complaint alleged a claim for violation of Civil Code section 1512, or can be amended to allege such a claim. Civil Code section 1512 provides: "If the performance of an obligation be prevented by the creditor, the debtor is entitled to all the benefits which he would have obtained if it had been performed by both parties." In other words, when a party to a contract is willing to perform but the other party prevents it, the party who was prevented from performing is entitled to damages. (*Navarro v. Jeffries* (1960) 181 Cal.App.2d 454, 460.)

In Shelton's analysis, she contends that by purchasing the property, she and Sherman became subsequent obligors who were liable to pay off the deed of trust or risk foreclosure on the property, and therefore, were protected by Civil Code section 1512, and the defendants' demand for payment prevented their performance. This analysis is incorrect, because they did not become debtors under the loan agreement.

A trustor (debtor) under a deed of trust retains the incidents of ownership of the property, including the right to transfer or convey the property. (5 Miller & Starr, Cal. Real Est. (4th ed. 2023) § 13:38, fn. omitted (hereafter Miller & Starr).) "When transferred, the grantee of the property receives the title subject to all existing deeds, mortgages, and other liens or encumbrances of which he or she has actual or constructive notice." (*Ibid.*)

The grantee of the property is not liable for the secured debt. (5 Miller & Starr, *supra*, § 13:38, fns. omitted.) "The

13

covenants contained in the deed of trust are not binding as personal covenants of the successor grantee of the trustor-covenantor who does not expressly assume the debt. An effective assumption requires an express written agreement executed by the grantee or his or her agent, or the acceptance of a deed that expressly provides that the grantee assumes the debt. A non-assuming grantee of property therefore is not personally liable for the obligation secured by the lien, or any deficiency after a foreclosure." (*Ibid.*)

There is no allegation in the complaint that Shelton and Sherman agreed to assume Nino's loan and make payments on the loan as part of the purchase transaction. Shelton and Sherman took the property subject to the existing trust deed, with full knowledge of the lender's rights under the trust deed, but they were not substituted as debtors required to perform under the loan agreement. Civil Code section 1512 does not apply under the circumstances of this case.

Shelton contends she can amend the complaint to state that Nino filed for bankruptcy and was discharged on June 29, 2020, so the lender's only recourse was through foreclosure on the trust deed. Even if, as Shelton argues, Nino was not considered a "debtor" due to a bankruptcy discharge, Shelton would not become a debtor under the promissory note secured by the trust deed without assuming Nino's obligation to make payments on the loan. The proposed amendment still would not state a cause of action for violation of Civil Code section 1512.

## IV. Negligence

Shelton contends that if MCLP bought the trust deed, it owed her a duty of good faith and fair dealing as a successor in interest under Nino's loan agreement. As explained above, however, Shelton did not assume the loan obligation and was not a successor in interest under Nino's loan agreement.

Shelton also contends that MCLP owed her an ordinary duty of care not to cloud title to her equitable interest in the property, which it breached by asserting without any basis that Nino owed money to MCLP to pay off Nino's loan. We conclude the defendants had no duty to Shelton to avoid the purely economic losses in this case.

"Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person . . . ." (Civ. Code, § 1714, subd. (a).)

To prevail on a negligence cause of action, a plaintiff must show: (1) the defendant owed plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach was a proximate or legal cause of plaintiff's injuries. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 477.)

The duty of care articulated in Civil Code section 1714 does not generally extend to purely economic losses unless the plaintiff and defendants have a special relationship. "What we mean by special relationship is that the plaintiff was an intended beneficiary of a particular transaction but was harmed by the defendant's negligence in carrying it out." (*Southern California Gas Leak Cases* (2019) 7 Cal.5th 391, 400.)

15

We consider the multifactor approach articulated in *Biakanja v. Irving* (1958) 49 Cal.2d 647, 650, to determine whether a defendant had a duty to exercise reasonable care to avoid negligently causing economic loss to a plaintiff who was not in privity of contract with the defendant.  (*Sheen v. Wells Fargo Bank, N.A.* (2022) 12 Cal.5th 905, 937 (*Sheen*); *J'Aire Corp v. Gregory* (1979) 24 Cal.3d 799, 804.)  The *Biakanja* factors are " '[1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to [the plaintiff], [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.' " (*Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1013–1014.)  "Deciding whether to impose a duty of care turns on a careful consideration of the ' " ' "the sum total" ' " ' of the policy considerations at play, not a mere tallying of some finite, one-size-fits-all set of factors.  [Citation.]" (*Southern California Gas Leak Cases*, *supra*, 7 Cal.5th at p. 401.)

On appeal, Shelton does not assert that she had a special relationship with the defendants or provide any other basis for a duty to avoid negligently inflicting purely economic losses.  We conclude there was no special relationship between the defendants and Shelton justifying liability.

When MCLP and Shellpoint sent their initial notices to Nino, they clearly had no relationship with Shelton.  The defendants were unaware of the purchase agreement, did not intend the notices to affect third parties, and harm to third parties from the initial notices was not foreseeable.

16

After the defendants became aware of the purchase agreement and Shelton's interest in the underlying property, they continued to assert a right to payment from Nino, allegedly falsely. Applying the *Biakanja* factors, we conclude the defendants did not owe a duty of care to Shelton to avoid purely economic losses under the circumstances of this case.

It was arguably foreseeable that a false claim to payment could delay the sale of the property, increasing the cost to the buyers, because Shelton informed the defendants of this impending harm.

The payoff demand, however, was intended for Nino to rely upon; it was not intended to affect Shelton directly. The connection between the defendants' conduct and Shelton's harm was not sufficiently close to impose a duty of care to Shelton under the circumstances. Shelton was not the title owner of record. When the proper entity for payment could not be established and title insurance could not be obtained, Shelton chose not to complete the sale. Later, when the defendants established their right to payment and title insurance could be obtained, Shelton chose to purchase the property by taking out a loan at a higher interest rate. The defendants' conduct and Shelton's harm were not sufficiently closely connected to find the defendants had a duty to avoid Shelton's purely economic losses.

Although the conduct alleged is morally indefensible, and holding people accountable for falsely claiming a right to payment could prevent similar future conduct, allowing third parties to assert negligence claims based on a false payment demand would be susceptible to fraudulent or collusive claims and speculative damages. Based on consideration of the totality

17

of the factors, we conclude the parties in this case did not have a special relationship.

## V.     Intentional Interference with Contract

Shelton contends the allegations of the complaint are sufficient to allege a cause of action for interference with contract as follows:  Shelton and Sherman had a contract to purchase the property, which MCLP and Shellpoint were aware of; the defendants falsely asserted a right to payment, which made Shelton and Sherman's performance more expensive and thereby disrupted the contract; and the defendants knew, or should have known, disruption of performance was substantially certain to occur.  We agree these allegations are sufficient to state a cause of action.

Under California law, a stranger to a contract may be liable for interfering with the performance of a contract.  (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 513–514.)  The elements of the cause of action are:  (1) a valid contract between the plaintiff and a third party; (2) defendant's knowledge of the contract; (3) acts by the defendant designed to induce a breach of that contract; (4) actual breach or disruption of that contract; and (5) resulting damage.  (*Reeves v. Hanlon* (2004) 33 Cal.4th 1140, 1148; *Ixchel Pharma, LLC v. Biogen, Inc.* (2020) 9 Cal.5th 1130, 1141 (*Ixchel*).)  In general, it is not necessary that the defendant's conduct be wrongful apart from the interference, with certain exceptions.  (*Ixchel*, *supra*, 9 Cal.5th at p. 1141.)

"An actionable claim for interference with contractual relations does not require that the defendant have the specific

intent to interfere with a contract.  A plaintiff states a claim so long as it alleges that the defendant knew interference was ' "certain or substantially certain to occur as a result of [defendant's] action." ' [Citation.]" (*Ixchel*, *supra*, 9 Cal.5th at p. 1148.)

We conclude the allegations of the complaint are sufficient to state a claim for intentional interference with contract. Shelton alleged that MCLP and Shellpoint knew there was no assignment of Nino's loan to MCLP, but even after learning of the pending purchase agreement and expiration of the interest rate lock, they continued to make false payoff demands, preventing Shelton from obtaining title insurance and closing the sale of the property before the favorable interest rate lock expired.  MCLP and Shellpoint acted deliberately by continuing to assert a false right to payment, despite knowledge of the purchase agreement, the requirements for title insurance, and the pending expiration of the interest rate lock.  As a result of their false payoff demands, the sale of the property was not concluded before the interest rate lock expired, causing Shelton damages.  Taken as a whole, these allegations are sufficient.

## VI.    Intentional Interference with Economic Advantage

Shelton contends the allegations of the complaint are also sufficient to allege a cause of action for intentional interference with economic advantage.  She asserts the defendants' conduct was independently wrongful under several theories, including that it constituted slander of title, violation of Civil Code section 1512, and was a tort and a crime to seek money by trick to which

19

the entities had no right. By engaging in this conduct, the defendants knew disruption of the relationship was certain or substantially certain to occur. We conclude the allegations are sufficient.

To state a claim for tortious interference with prospective economic advantage, the plaintiff must allege that the defendant knowingly interfered with an " ' "economic relationship between the plaintiff and some third party, [which carries] the probability of future economic benefit to the plaintiff." ' " (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1153 (*Korea Supply*).)

Courts require that the defendant's conduct must be " 'wrongful by some legal measure other than the fact of interference itself.' [Citation.]" (*Ixchel*, *supra*, 9 Cal.5th at p. 1142.) " '[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard.' [Citation.]" (*Ibid*.)

The defendant's wrongful conduct need not be directed at the plaintiff who is seeking to recover. (*Korea Supply*, *supra*, 29 Cal.4th at p. 1163.) "The interfering party is liable to the interfered-with party 'when the independently tortious means the interfering party uses are independently tortious *only as to a third party*. Even under these circumstances, the interfered-with party remains an intended (or at least known) victim of the interfering party—albeit one that is indirect rather than direct.' [Citation.] In fact, '[t]he most numerous of the tortious interference cases are those in which the disruption is caused by an act directed not at the plaintiff, but at a third person.' [Citation.]" (*Ibid*; see also *Crown Imports, LLC v. Superior Court*

20

(2014) 223 Cal.App.4th 1395, 1405 ["interfering act [need not] be independently wrongful *as to the plaintiff*"].)

" ' "The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or ' "scienter" '); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." [Citations.]' " (*Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1059–1060.)

In this case, Shelton alleged MCLP and Shellpoint were aware of her economic relationship with Nino and knew that falsely representing Nino's loan was assigned to MCLP would interfere with escrow closing and the expiration of Shelton's favorable rate lock. Shelton asserts the false statement that Nino's loan had been assigned to MCLP and false demands for payment from Nino were independently wrongful, because the false representations were made with the intent to induce reliance by Nino, the parties reasonably relied on the statements to delay closing escrow, and Shelton suffered damages in the form of the higher costs to purchase the property. The allegations were sufficient to allege a claim for intentional interference with economic advantage at this stage of the proceeding.

## VII.   Negligent Interference with Economic Advantage

Shelton contends the complaint also adequately alleged a claim for negligent interference with economic advantage. We disagree.

" 'The tort of *negligent* interference with economic relationship arises only when the defendant owes the plaintiff a

21

duty of care.' (*Stolz v. Wong Communications Limited Partnership* (1994) 25 Cal.App.4th 1811, 1825.)" (*LiMandri v. Judkins* (1997) 52 Cal.App.4th 326, 348.) To state a claim for negligent interference with prospective business advantage, the plaintiff must allege: "(1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and the plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship." (*North American Chemical Co. v. Superior Court* (1997) 59 Cal.App.4th 764, 786.) In addition, the defendant's interference must be wrongful by some measure independent of the interference itself. (*National Medical Transportation Network v. Deloitte & Touche* (1998) 62 Cal.App.4th 412, 439.)

MCLP and Shellpoint contend that the complaint fails to state a claim for negligent interference with contract because they did not owe a duty of care to Shelton. We agree. As explained above, there was no special relationship between the defendants and Shelton under which the defendants had a duty to avoid Shelton's purely economic losses.

## DISPOSITION

The judgment and the order sustaining the demurrer are reversed. The trial court is directed to enter a new and different order sustaining the demurrer as to the causes of action for slander of title, violation of Civil Code section 1512, negligence, and negligent interference with economic advantage, but overruling the demurrer as to the causes of action for intentional interference with contract and intentional interference with economic advantage. Appellant Alda Shelton is awarded her costs on appeal.

NOT TO BE PUBLISHED.


MOOR, J.


WE CONCUR:


BAKER, Acting, P. J.


KIM (D.), J.